**Robert M. SITOSKI, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 30, 2010.

Decided Oct. 20, 2010.

Publication Ordered Dec. 15, 2010.

Robert M. Sitoski, Philadelphia, for appellant.

Terrance M. Edwards, Asst. Counsel, Harrisburg, for appellee.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Robert M. Sitoski (Licensee) appeals from the order of the Court of Common Pleas of Delaware County (trial court), which denied Licensee's appeal from the eighteen-month suspension of his driver's license imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) pursuant to the Implied Consent Law, Section 1547(b)(1)(ii) of the Vehicle Code.[1] On appeal, Licensee argues that the trial court erred and/or abused its discretion in denying his appeal because: (1) the Department did not satisfy its burden of proving that Licensee received the proper warnings regarding the loss of his driver's license; (2) Licensee's refusal to submit to chemical testing was not knowing or conscious; and (3) the Department improperly introduced evidence of a prior suspension, the appeal of which was pending at the time of the hearing. We affirm.

By letter mailed on August 21, 2008, the Department notified Licensee that his license would be suspended for eighteen months due to his refusal to submit to chemical testing on June 29, 2008 (Notice). (Letter from Department to Licensee (August 21, 2008) at 1, R.R. at 61a.) Licensee filed an appeal to the trial court, which held a de novo hearing on October 29, 2008.

At the de novo hearing, the Department offered Licensee's certified driving records (Certified Record). The Certified Record included: the Notice; the June 29, 2008 Implied Consent warnings (DL–26 Form) indicating that Licensee had refused chemical testing, signed by Officer Robert Marvil (Officer Marvil) but not signed by Licensee; the February 6, 2008, notice from the Department indicating that Licensee's license was suspended for one year based on Licensee's refusal to submit to chemical testing on November 25, 2007; a DL–26

---

1. 75 Pa.C.S. § 1547(b)(1)(ii). Section 1547(b)(1)(ii) of the Implied Consent Law authorizes the Department to suspend a driver's license for eighteen months if the licensee refuses to submit to chemical testing and has previously refused to submit to chemical testing. *Id.*

Form, dated November 25, 2007, indicating that Licensee refused to submit to chemical testing, signed by Licensee and the requesting officer; and a partial copy of Licensee's driving record. (Certified Record, Department Ex. 1, R.R. at 61a–74a.)

The Department also presented the testimony of Officer Marvil, a police officer for the Collingdale Borough Police Department, who testified as follows. While on patrol in an unmarked vehicle, Officer Marvil observed a silver Volvo, operated by Licensee, stopped for a red traffic light within an intersection and obstructing some of the traffic lanes in the intersection. (Hr'g Tr. at 4–5, R.R. at 79a–80a.) After the light turned green, Licensee pulled off to the right side of the road, allowing Officer Marvil to pass. (Hr'g Tr. at 5, R.R. at 80a.) After passing Licensee, Officer Marvil observed Licensee pull back out into traffic, at which point Officer Marvil pulled off the road and allowed Licensee to pass him. (Hr'g Tr. at 5, R.R. at 80a.) At another red traffic signal, Officer Marvil observed Licensee again stop in the oncoming lanes, again obstructing those lanes. (Hr'g Tr. at 6, R.R. at 81a.) After the light turned green, Licensee again pulled off to the side of the road to allow Officer Marvil to pass. (Hr'g Tr. at 6, R.R. at 81a.) Officer Marvil then activated his lights and siren and initiated a traffic stop. (Hr'g Tr. at 6, R.R. at 81a.)

Officer Marvil requested Licensee's license, registration, and insurance card, and advised Licensee that he was being pulled over for obstructing the two intersections. (Hr'g Tr. at 6–7, R.R. at 81a–82a.) Licensee supplied his license, but was unable to provide his registration and insurance card. (Hr'g Tr. at 7, R.R. at 82a.) While interacting with Licensee, Officer Marvil detected a strong odor of alcohol coming from Licensee, observed that Licensee's eyes were glassy, red, and bloodshot, and noticed that Licensee's speech was slurred. (Hr'g Tr. at 7, R.R. at 82a.) Officer Marvil requested Licensee to turn off and exit his vehicle and move to the rear of the vehicle; as Licensee did so, Officer Marvil observed that Licensee displayed extremely poor balance, requiring Licensee to hold onto the side of his vehicle. (Hr'g Tr. at 7–8, R.R. at 82a–83a.) Advising Licensee that he was under investigation for the suspicion of driving under the influence (DUI), Officer Marvil then began to conduct field sobriety tests. (Hr'g Tr. at 8, 19, 64, R.R. at 83a, 94a, 139a.) However, before Officer Marvil actually began the field sobriety tests, his dispatcher advised him that Licensee had an outstanding warrant for his arrest from Philadelphia County. (Hr'g Tr. at 8, R.R. at 83a.) Knowing that there was an outstanding warrant for Licensee's arrest, Officer Marvil terminated field sobriety testing, and he placed Licensee under arrest based on the outstanding warrant and for DUI, advising Licensee of the Implied Consent Law. (Hr'g Tr. at 9, R.R. at 84a.) When asked what warnings he recalled telling Licensee, Officer Marvil indicated that he was not comfortable testifying to what exactly he informed Licensee, but he recalled asking Licensee to submit to chemical testing and Licensee refusing. (Hr'g Tr. at 9–10, R.R. at 84a–85a.) Thereafter, Licensee was transferred to Collingdale Borough Police Headquarters and was placed in a holding cell, where Officer Marvil read Licensee all four paragraphs of the DL–26 Form[2]

2. The DL–26 Form provides the following information: (1) the licensee is under arrest for DUI in violation of Section 3802(a) of the Vehicle Code; (2) the officer is requesting a chemical test of a particular type (blood, urine, etc.); (3) it is the officer's duty to

word for word, and requested Licensee to submit to a blood test.[3] (Hr'g Tr. at 10–14, 61–62, R.R. at 85a–89a, 136a–37a.) Licensee remained silent, and Officer Marvil deemed that Licensee was refusing to submit to chemical testing. (Hr'g Tr. at 16, R.R. at 91a.)

Licensee testified on his own behalf, explaining that he drove as he did on June 29, 2008, because he was afraid for his safety due to being closely followed by a large, unmarked SUV. (Hr'g Tr. at 88–89.)[4] According to Licensee, Officer Marvil administered a Preliminary Breath Test (PBT) to him at the scene, the results of which were negative, and he never refused to submit to a chemical test at the scene. (Hr'g Tr. at 89–90, 92.) Licensee indicated that Officer Marvil did not give him any implied consent warnings at the scene or at the police station. (Hr'g Tr. at 91–92.) Licensee explained that the warrant for his arrest was the result of a mix-up with his attorney on another matter and was lifted immediately. (Hr'g Tr. at 90–91.) Licensee indicated that he did not sign the DL–26 Form because he never refused and that he told Officer Marvil this at the

police station. (Hr'g Tr. at 92.) Finally, Licensee testified that he had major surgery on one of his toes, which affected his sense of balance and walking. (Hr'g Tr. at 106–07.) In addition to his testimony and the hearing transcript from Licensee's DUI preliminary hearing, which Licensee sought to use to impeach Officer Marvil's credibility on certain issues, Licensee introduced: a photograph of Officer Marvil's unmarked SUV; a subpoena dated June 23, 2008, ordering Licensee to appear at the Philadelphia Municipal Court on that same day; and a photograph of Licensee's toes. (Licensee's Exs. 1–4, R.R. at 155a–97a.)

■ After considering the evidence and testimony presented, the trial court credited Officer Marvil's testimony and rejected Licensee's contrary testimony. (Trial Ct. Op. at 6.) The trial court provided a lengthy explanation as to why it rejected Licensee's testimony. (Trial Ct. Op. at 6–7.) The trial court concluded that: the Department satisfied its burden of proving that Licensee's license should be suspended for eighteen months, including that Officer Marvil provided Licensee with ade-

---

inform the licensee that, if the licensee refuses to submit to the chemical test, the licensee's operating privileges will be suspended for at least one year, that if the licensee refuses and is convicted or pleads guilty to violating Section 3802(a) of the Vehicle Code (related to impaired driving), the licensee is subject to more severe penalties, the same as if he was convicted of driving with the highest rate of alcohol; and (4) it is the officer's duty to inform the licensee that the licensee does not have the right to speak with an attorney, or anyone else, before deciding whether to submit and that any request to speak to an attorney or anyone else after being provided the warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of the licensee's operating privileges and other enhanced criminal penalties if convicted of impaired driving. (*See* DL–26 Form read by Officer Marvil to Licensee, R.R. at 64a.)

3. There was conflicting testimony regarding whether the holding cell door had a window, through which Officer Marvil read the DL–26 Form, or was a solid door. This conflict was subsequently resolved by the trial court in favor of the Department, who introduced photographs after the hearing of the holding cell door with a window. (Trial Ct. Op. at 3 n. 3, 5–6.) Licensee does not challenge this determination on appeal; accordingly, we will not address it further.

4. There are two transcripts of the October 29, 2008, hearing before the trial court. The first transcript, the one included in the Reproduced Record, does not contain Licensee's testimony. The second transcript, which is only in the certified record, contains all of the testimony and evidence submitted to the trial court.

quate implied consent warnings and that Licensee refused to submit to chemical testing; Licensee failed to establish that his refusal was not knowing or conscious or that he was physically incapable of submitting to chemical testing; Licensee's arguments pertaining to the sufficiency of the implied consent warnings and when the warnings had to be given were without merit; and that it properly allowed the Department to submit evidence regarding Licensee's prior license suspension for refusal to submit to chemical testing to support the Department's issuance of an eighteen-month license suspension. (Trial Ct. Op. at 7–11.) Licensee now appeals to this Court.[5]

Licensee argues that the Department failed to satisfy its burden of proving that it properly suspended Licensee's license where the implied consent warnings were not read at the scene, were not sufficiently specific, and were read more than two hours after Licensee had operated his vehicle.[6] Additionally, Licensee argues that the trial court abused its discretion in allowing the Department to introduce evidence of Licensee's prior license suspension, which was being appealed at the time of the hearing. Although we will address each of Licensee's arguments in turn, we will first address Licensee's assertion, raised throughout his brief, that the trial court abused its discretion in crediting Officer Marvil's testimony.

 Licensee spends considerable effort attacking Officer Marvil's credibility citing, *inter alia*, Officer Marvil's lack of experience, testimony from the preliminary hearing, and inability to specifically

recall exactly what warnings he gave to Licensee at the scene of the DUI stop. Licensee essentially asks this Court to reweigh the evidence, find his evidence credible, and conclude that the Department failed to establish its burden of proof. However, this Court is not vested with the authority to do so. As the Department correctly points out in its brief, this Court recently stated:

> What Licensee really wants this court to do is to reweigh the evidence and determine that [the police officer's] affidavit and testimony were not credible while Licensee's argument that he was not warned was credible. This we will not do. Questions of credibility are for the trial court to resolve.

*Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.2d 380, 385 (Pa.Cmwlth.2010). Furthermore, the resolution of questions of evidentiary weight and conflicts in the testimony is solely in the province of the trial court. *Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa.Cmwlth.2005). Here, the trial court explicitly credited Officer Marvil's testimony and offered an extensive explanation as to why it rejected Licensee's testimony, stating, *inter alia*, that Licensee's testimony "instilled no sense of confidence in his ability to recall and relate the events accurately." (Trial Ct. Op. at 6.) We are bound by these credibility determinations and cannot reweigh the evidence as Licensee desires. *Gammer*, 995 A.2d at 385; *Hasson*, 866 A.2d at 1186.

 We now turn to Licensee's argument that the Department failed to satisfy

---

5. Our review in a license suspension case is "to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion." *Nornhold v. Department of Transportation, Bu-*

*reau of Driver Licensing*, 881 A.2d 59, 62 n. 4 (Pa.Cmwlth.2005).

6. Before this Court, Licensee no longer argues that he did not receive a warning at the police station.

its burden of proof pursuant to Section 1547(b) of the Implied Consent Law because it did not establish that Officer Marvil gave Licensee the proper warnings **at the scene.** Licensee's argument is twofold: (1) that, in order for any implied consent warnings to be valid, the warnings must be given **at the scene;** and (2) the warnings Officer Marvil gave Licensee at the scene were insufficient. Thus, Licensee asserts that, pursuant to *Thoman v. Department of Transportation, Bureau of Driver Licensing,* 965 A.2d 385 (Pa. Cmwlth.2009), the appeal of his license suspension should be sustained because he did not receive specific warnings at the scene.

■■■■ In order to sustain the appeal of a license suspension under Section 1547 of the Implied Consent Law:

> the Department bears the burden of proving that the driver (1) was placed under arrest for driving while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of his or her driver's license.

*Thoman,* 965 A.2d at 388. "To satisfy the 'specific warning' requirement, 'a precisely enunciated warning that a driver's license **will be** revoked' must be given." *Id.* (quoting *Everhart v. Commonwealth of Pennsylvania,* 54 Pa.Cmwlth. 22, 420 A.2d 13, 15 (1980) (emphasis added in *Thoman* )). Once the Department satisfies its initial burden of proof, the burden then shifts to the licensee to show that he was

physically unable to take the test or that the refusal was not knowing or conscious.[7] *Thoman,* 965 A.2d at 388. However, if the warnings given to the licensee are not specific, it is irrelevant if the licensee's refusal was knowing or conscious. *Id.*

Licensee cites no support for his assertion that the warnings must be provided at the scene, and our research has revealed no such requirement. Instead, we agree with the Department that all that is required is that the warnings be read to the licensee and the licensee be given "a meaningful opportunity to comply with [S]ection 1547 of the [Implied Consent Law]." (Department's Br. at 11 (quoting *Broadbelt v. Department of Transportation, Bureau of Driver Licensing,* 903 A.2d 636, 640 (Pa. Cmwlth.2006)).) Section 1547(b)(2) of the Implied Consent Law sets forth the warning requirements, providing:

> (2) It shall be the duty of the police officer to inform the person that:
>
> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
>
> (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided for in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547(b)(2). There is no mention in this subsection, or elsewhere in the Implied Consent Law, of a requirement that the implied consent warnings be read in any particular place—particularly at the scene of the DUI arrest.[8] Indeed, in *Tho-*

---

7. Thus, to the extent that Licensee suggests on page 10 of his brief that it was the Department's burden to show that Licensee's refusal was knowing and conscious, we reject his suggestion.

8. Indeed, our Court has held that, to be valid, the request to submit to chemical testing or the warning regarding the consequences of

the refusal to submit are not required to be made at the site where the testing equipment is present. *Department of Transportation, Bureau of Driver Licensing v. Zeltins,* 150 Pa. Cmwlth. 44, 614 A.2d 349, 353 (1992); *Department of Transportation, Bureau of Driver Licensing v. Courson,* 136 Pa.Cmwlth. 586, 584 A.2d 386, 390 (1990); *Department of*

*man*, the very case Licensee relies upon to support the reversal of his license suspension, the officer read the DL–26 Form to the licensee in the parking lot of a local hospital, not the scene of the DUI arrest. *Thoman*, 965 A.2d at 386. Accordingly, we conclude that Licensee's argument that implied consent warnings are invalid if they are not read at the scene of the DUI arrest is without merit.

■■ Moreover, we disagree with Licensee that the warnings he received were not specific enough to satisfy the requirements in *Thoman* and the Implied Consent Law. Although Officer Marvil testified that he gave Licensee the warnings "off the top of his head" at the scene and that he was not comfortable testifying to exactly what those warnings entailed, he credibly testified that he read all four paragraphs of the DL–26 Form to Licensee while Licensee was in the holding cell at the police station. (Hr'g Tr. at 11, 13, R.R. at 86a, 88a.) Officer Marvil explained that, after he read the DL–26 Form to Licensee, Licensee remained silent, despite the fact that the warnings expressly indicate that remaining silent constitutes a refusal to submit. (Hr'g Tr. at 14, R.R. at 89a.) If a licensee remains silent after receiving the implied consent warnings, that silence constitutes a refusal to submit. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 253, 684 A.2d 539, 545 (1996); *Broadbelt*, 903 A.2d at 641. Officer Marvil further testified that, had Licensee agreed to submit to

chemical testing, he would have transported Licensee to a local hospital for a blood test. (Hr'g Tr. at 13, R.R. at 88a.) The trial court credited Officer Marvil's testimony, and, based on that credited testimony, we hold that Licensee received "a meaningful opportunity to comply with [S]ection 1547 of the [Implied Consent Law,]" but refused to do so. *Broadbelt*, 903 A.2d at 640.

Licensee next argues that his refusal was not knowing or conscious because he consented to taking, and took, the PBT at the scene and, therefore, was confused as to why a second chemical test was necessary. Licensee maintains that, pursuant to *Scott* and *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989),[9] "a motorist's confusion which is caused by the police can vitiate a refusal," (Licensee Br. at 16), and that his confusion rendered his refusal not knowing or conscious. We disagree.

■ The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court. *Gregro v. Department of Transportation, Bureau of Driver Licensing*, 987 A.2d 1264, 1267 (Pa.Cmwlth.2010). "[A]nything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal." *Id.* We note that the only evidence that Licensee submitted to a PBT at the scene was

*Transportation, Bureau of Driver Licensing v. Stay*, 114 Pa.Cmwlth. 532, 539 A.2d 57, 58 (1988).

9. *Scott* and *O'Connell* both involved the question of whether a licensee can rely upon allegations of confusion based on the applicability of the licensee's *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to a request for chemical testing to establish that the licensee's refusal was not knowing or conscious. *Scott*, 546 Pa.

at 243–44, 684 A.2d at 540–41; *O'Connell*, 521 Pa. at 251–52, 555 A.2d at 877–78. In *O'Connell*, our Supreme Court held that, when a licensee is requested to submit to chemical testing, the police officer has the obligation to explain to the licensee that the rights provided for in *Miranda* are inapplicable to a request for chemical testing under the Implied Consent Law. *O'Connell*, 521 Pa. at 252–53, 555 A.2d at 878.

Licensee's testimony, which the trial court rejected as not credible, stating "[Licensee's] recollection that he was offered and passed the PBT may have been a result of alcohol induced confabulation." (Trial Ct. Op. at 7.) To the extent that Officer Marvil could not recall whether he gave Licensee a PBT, he also testified that there was no reference to a PBT in the Affidavit and that, had Licensee taken a PBT, the results would have been included in the Affidavit. (Hr'g Tr. at 65, 66, R.R. at 140a–41a.) The trial court rejected Licensee's testimony and inferred from the record that Licensee did not submit to a PBT. (Trial Ct. Op. at 5 n. 5, 7.) As fact finder, the trial court was within its right to do so. *Gammer*, 995 A.2d at 385; *Hasson*, 866 A.2d at 1186. Accordingly, the very basis of Licensee's alleged confusion, the request for a "second" chemical test, is without support in the record.

█ In addition, as noted by the Department, even if Licensee had submitted to a PBT, the completion of a PBT does not satisfy the chemical testing requirements of Section 1547(a)(1) of the Vehicle Code. *Gregro*, 987 A.2d at 1268;[10] *Ryan v. Department of Transportation, Bureau of Driver Licensing*, 823 A.2d 1101, 1104 (Pa.Cmwlth.2003). In *Gregro*, we held that "agreeing to a [PBT] does not satisfy the requirement to submit to chemical testing for which a refusal does result in a suspension." *Id.* at 1268. Moreover, this Court previously considered and rejected Licensee's argument that a licensee's subjective confusion based on the completion

of a PBT supports the conclusion that the licensee's refusal was not knowing or conscious. *Ryan*, 823 A.2d at 1105; *Appeal of Attleberger*, 136 Pa.Cmwlth. 329, 583 A.2d 24, 27 (1990). In *Ryan*, we stated that "any confusion as to the responsibility to submit to the second type of test arose not from statements made by the police officer but solely from Licensee's 'self-induced and self-destructive confusion about what the law is or should be.'" *Id.* at 1105 (quoting *Attleberger*, 583 A.2d at 27). Consequently, we conclude that Licensee did not establish that his refusal to submit to chemical testing was not knowing or conscious.

Licensee asserts next that the implied consent warnings he received at the police station were insufficient pursuant to Section 3802(a)(2) of the Vehicle Code because the warnings were given more than two hours after Licensee allegedly drove his vehicle while under the influence of alcohol. Section 3802(a)(2), states:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within **two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.**

75 Pa.C.S. § 3802(a)(2) (emphasis added). Section 3802(g) provides that, where the chemical test sample was collected beyond the two-hour time frame, the Common-

---

10. In *Gregro*, the licensee argued that he complied with Section 1547 of the Vehicle Code because he submitted to a PBT even though he later refused to submit to a blood test. *Id.*, 987 A.2d at 1266–67. This Court rejected that argument based on Section 1547(k) of the Vehicle Code, which provides that police officers with reasonable suspicion to believe that a person is driving or in control of a

vehicle while under the influence of alcohol may require the licensee, prior to arrest, to submit to a PBT for the sole purpose of determining whether the person should be placed under arrest, but that the refusal to submit to the PBT is not considered a refusal for the purpose of Section 1547(b) (relating to suspension for refusal to submit to chemical testing). *Id.* at 1267.

wealth may still use the results as evidence of the licensee's alcohol or controlled substance concentration if the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours and establishes that the licensee did not imbibe in any alcohol or use any substance between the time the licensee was arrested and the time the sample was obtained. 75 Pa.C.S. § 3802(g). Thus, according to Licensee, because the chemical test must be performed within two hours for the purpose of Section 3802, "it is logical to assume that the **warnings also must be given within 2 hours.**" (Licensee's Br. at 18 (emphasis in original).) Again, we disagree.

As noted by the trial court and the Department, (Trial Ct. Op. at 9–10; Department's Br. at 15), the sanctions imposed by the Implied Consent Law, i.e., a license suspension, are civil in nature and are wholly unrelated to a criminal prosecution for DUI, which is governed by Section 3802 of the Vehicle Code. *Witmer v. Department of Transportation, Bureau of Driver Licensing*, 880 A.2d 716, 719 (Pa. Cmwlth.2005). Our Courts have consistently held that a licensee may not seek civil remedies, i.e., the reversal of a license suspension, where the licensee's rights as a criminal defendant have been compromised. *See, e.g., Department of Transportation v. Wysocki*, 517 Pa. 175, 180, 535 A.2d 77, 79 (1987) (holding that the legality of a licensee's arrest is immaterial in a license suspension proceeding as the licensee's guilt or innocence of a criminal offense is not at issue in the license suspension proceeding); *Nornhold v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 59, 63 (Pa.Cmwlth.2005)

(indicating that questions regarding the legality of a licensee's arrest for DUI are properly directed at the court of common pleas in the criminal proceeding and that such questions have no bearing in the context of a license suspension appeal); *Witmer*, 880 A.2d at 719 (holding that a claim concerning a police officer's failure to properly "Mirandize" a licensee should be addressed to the criminal court through a suppression hearing or a motion for post-sentence relief, not through the civil remedy of reversing the license suspension). Indeed, the fact that the criminal DUI proceedings pursuant to Section 3802(a) have no bearing on the civil license suspension proceedings under Section 1547(b) is further demonstrated by the fact that, to pursue a license suspension under Section 1547(b), the Department need not demonstrate that the licensee was actually convicted of, or even formally charged with, DUI. *Department of Transportation v. Grippo*, 111 Pa.Cmwlth. 421, 533 A.2d 1142, 1143 (1987). Thus, we conclude that the two-hour time window for submitting to a chemical test set forth in Section 3802 is related to a licensee's criminal prosecution for DUI and has no bearing on whether the implied consent warnings were properly given to the licensee for the purposes of a license suspension under Section 1547(b).

Finally, Licensee maintains that the trial court abused its discretion by allowing the Department to introduce evidence of a prior license suspension, the appeal of which was pending at the time of the hearing, because that evidence was improper, prejudicial, and irrelevant as it was evidence of prior bad acts.[11] Licensee

---

11. Citing to case law involving criminal proceedings, Licensee contends that the trial court should not have admitted this evidence because "evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa. R.E. 404(b)(1)." (Licensee's Br. at 21–22 (quoting *Commonwealth v. Sherwood*, 603 Pa. 92, 114, 982 A.2d 483, 497 (2009).))

contends that the Department "introduced this evidence solely for the purpose of poisoning the record or the trial court" and that "[t]he sole purpose of this hearing was to determine whether the appropriate warnings were given and whether there was a knowing and conscious refusal." (Licensee's Br. at 20–21.) Again, we disagree.

■■■■ Rulings on the admissibility of evidence are within a trial court's discretion and those rulings should not be reversed on appeal absent a clear abuse of discretion. *Harsh v. Petroll,* 840 A.2d 404, 429–30 (Pa.Cmwlth.2003). An:

> [a]buse of discretion is not merely an error of judgment, but if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, [i]s shown by the evidence or the record, discretion is abused.

*Shaw v. Township of Aston,* 919 A.2d 303, 305 (Pa.Cmwlth.2007) (quoting *Sherman v. Yoder,* 59 Pa.Cmwlth. 430, 430 A.2d 347, 348 (1981)). Here, because the Department suspended Licensee's license for eighteen months, the Department had to establish that one of the enhancing provisions set forth in Section 1547(b)(1)(ii) was applicable. This section provides that the Department "shall suspend the operating privilege of the person as follows: (ii) For a period of 18 months if any of the following apply: (A) The person's operating privileges have previously been suspended under this subsection." 75 Pa.C.S. § 1547(b)(1)(ii)(A). Thus, we reject Licensee's contention that the Department introduced evidence of Licensee's prior refusal solely to prejudice the record and as evidence of prior bad acts. Instead, the Department was simply attempting to satisfy its burden of proving why it imposed the enhanced eighteen-month suspension under Section 1547(b)(1)(ii)(A). It did so by introducing Licensee's Certified Record, which revealed that Licensee's license had been suspended on February 6, 2008, for refusing to submit to chemical testing on November 25, 2007. (Certified Record, Department Ex. 1, Item 3, R.R. at 65a–69a.) Consequently, we conclude that, in admitting this evidence, the trial court did not abuse its discretion, i.e., did not override or misapply the law, exercise its judgment in a manifestly unreasonable manner, or show partiality, prejudice, bias or ill will.[12]

For the foregoing reasons, we affirm.

### ORDER

**NOW,** October 20, 2010, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby **AFFIRMED.**

---

We reiterate, however, that a license suspension is a **civil** proceeding that is independent from any criminal DUI proceeding that may result from Licensee's arrest. Furthermore, as indicated below, the Department was not introducing this evidence to establish that Licensee acted in conformity with the past acts or to show criminal propensity, but to support its decision to suspend Licensee's operating privileges for eighteen months.

12. Indeed, the trial court expressly indicated that it reviewed this evidence solely to determine whether the enhanced suspension was proper. (Trial Ct. Op. at 3 n. 2.) Further, the trial court clearly considered the fact that the prior suspension was under appeal and indicated that it expected the Department to properly adjust the length of Licensee's suspension if Licensee prevailed in his appeal. (Trial Ct. Op. at 11.)