## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alan Wade Murray, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 10 C.D. 2014 |
| | : | Submitted: June 13, 2014 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  July 24, 2014**

        This matter is an appeal from an order of the Court of Common Pleas of Chester County (the trial court) denying the appeal of Alan Wade Murray (Licensee) from a one-year suspension of his driver's license for refusal of chemical testing imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) pursuant to the Implied Consent Law, Section 1547 of the Vehicle Code.[1]  We affirm.

        In the early morning hours of February 16, 2013, Licensee was pulled over by Officer Yankanich of the East Brandywine Township Police Department on Horseshoe Pike, Downingtown, Pennsylvania for driving his SUV outside his

---

[1] 75 Pa. C.S. § 1547.

traffic lane. (12/24/13 Trial Court Opinion at 1; 10/10/13 Hearing Transcript (10/10/13 H.T.) at 4-5, 17-19, Reproduced Record (R.R.) at 48a-49a, 61a-63a.) At the scene, Officer Yankanich observed that Licensee smelled of alcohol and had glassy, bloodshot eyes, and Licensee admitted that he had had a few drinks. (10/10/13 H.T. at 5, 19, R.R. at 49a, 63a.) Officer Yankanich performed field sobriety tests and a portable breath test, all of which showed intoxication, and arrested Licensee for driving under the influence of alcohol (DUI). (12/24/13 Trial Court Opinion at 1; 10/10/13 H.T. at 5, 19-20, R.R. at 49a, 63a-64a.)

Officer Yankanich transported Licensee to Brandywine Hospital for a blood alcohol test. (12/24/13 Trial Court Opinion at 1-2; 10/10/13 H.T. at 5-6, 20, R.R. at 49a-50a, 64a.) At the hospital, Officer Yankanich asked Licensee to submit to a blood test and read him the warnings on the D-26 Implied Consent Warnings Form. (12/24/13 Trial Court Opinion at 2; 10/10/13 H.T. at 6-8, 20-21, R.R. at 50a-52a, 64a-65a.) The warnings that Officer Yankanich read to Licensee specifically advised him that his driver's license would be suspended if he refused to submit to the blood test, that "[y]ou have no right to speak with an attorney or anyone else before deciding whether to submit to testing," and that "[i]f you request to speak with an attorney or anyone else after being provided these warnings or if you remain silent when asked to submit to chemical testing, you will have refused the test." (12/24/13 Trial Court Opinion at 2; 10/10/13 H.T. at 6-8, R.R. at 50a-52a; Hearing Ex. C-1, D-26 Form, Supplemental Reproduced Record attached to Appellee's Brief (Supp. R.R.) at 28b.) Licensee signed the D-26 Form acknowledging that he had received those warnings. (12/24/13 Trial Court Opinion at 2; 10/10/13 H.T. at 6-9, 20-21, R.R. at 50a-53a, 64a-65a; Hearing Ex. C-1, D-26 Form, Supp. R.R. at 28b.) Licensee asked to contact his attorney, and

2

when he was not permitted to do so, he refused to submit to the blood alcohol test. (12/24/13 Trial Court Opinion at 2, 4; 10/10/13 H.T. at 6, 13-16, 21-24, R.R. at 50a, 57a-60a, 65a-68a.)

By letter dated March 18, 2013, the Department notified Licensee that his driver's license was being suspended for a period of one year for this refusal to submit to chemical testing. (Hearing Ex. C-1, 3/18/13 Letter from Department to Licensee, Supp. R.R. at 25b-27b.) Although Licensee received this letter by March 19, 2013, he did not file an appeal to the trial court until July 5, 2013, asserting that the late appeal was excused by a communication between his counsel and the Department. (Appeal from Suspension of Operating Privileges ¶¶4-6, R.R. at 6a-7a.)

A hearing on Licensee's appeal of the one-year license suspension was scheduled for August 8, 2013. (7/5/13 Scheduling Order, R.R. at 11a.) At this hearing, the Department contended that the only matter before the trial court in that appeal[2] was whether it was barred as untimely or Licensee should be allowed to appeal *nunc pro tunc*. (8/8/13 H.T. at 7, 11-12, R.R. at 19a, 23a-24a.) The trial court permitted Licensee to appeal *nunc pro tunc* based on Licensee's counsel's representations that he spoke by telephone with an unidentified Department employee when the notice of suspension was received, who told him that after the

---

[2] Licensee had two license suspension appeals before the trial court on that hearing date. In the spring of 2013, Licensee had entered into an accelerated rehabilitative disposition (ARD) of the underlying February 16, 2013 DUI charge, and the Department imposed an additional 60-day suspension as a result of the ARD. (Hearing Ex. C-1, 6/1/13 Letter from Department to Licensee and DL-21 Clerk of Courts ARD Report, Supp. R.R. at 22b-24b.) The hearing on Licensee's separate, timely appeal from that additional 60-day suspension was also scheduled for August 8, 2013. (8/8/13 H.T. at 2, 9, R.R. at 14a, 21a.) The trial court sustained Licensee's appeal of the 60-day suspension (*id.* at 15-16, 19, R.R. at 27a-28a, 31a), and that decision is not at issue here.

criminal DUI proceedings against Licensee the arresting officer "will update that information" and the Department "will send out another notice." (*Id.* at 12-16, R.R. at 24a-28a; 8/8/13 Order, R.R. at 34a.) The trial court did not hear the merits of Licensee's appeal of his one-year license suspension at the August 8, 2013 hearing and granted the Department a continuance of the *de novo* hearing. (8/8/13 H.T. at 14-16, 18-19, R.R. at 26a-28a, 30a-31a; 8/8/13 Scheduling Order, R.R. at 35a.)

On October 10, 2013, the trial court held the *de novo* hearing in this matter. At this hearing, Officer Yankanich testified to his stop and arrest of Licensee, Licensee's signs of intoxication, his request that Licensee submit to a blood test, the warnings that he gave Licensee, and Licensee's refusal to submit to the blood test. (10/10/13 H.T. at 4-9, R.R. at 48a-53a.) The D-26 Implied Consent Warnings form signed by Licensee was also introduced in evidence. (*Id.* at 6-7, R.R. at 50a-51a; Hearing Ex. C-1, D-26 Form, Supp. R.R. at 28b.) Licensee testified and did not dispute Officer Yankanich's testimony concerning the warnings he was given or that he refused the blood test. (10/10/13 H.T. at 20-24, R.R. at 64a-68a.) Licensee contended that he asked and was not allowed to call his lawyer, and that he would not agree to the blood test because he was confused and wanted to talk to his lawyer. (10/10/13 H.T. at 21-25, R.R. at 65a-69a.)

The trial court found that Licensee was confused about his rights and that he was not stalling to interfere with the blood test. (12/24/13 Trial Court Opinion at 2; 2/25/14 Trial Court Pa. R.A.P. 1925(a) Opinion at 5.) The trial court, however, found that Licensee received all required warnings concerning the consequences of refusing the blood test and his rights with respect to the test and that he refused the blood test. (12/24/13 Trial Court Opinion at 2-4; 2/25/14 Trial

4

Court Pa. R.A.P. 1925(a) Opinion at 2-3, 6-7.) The trial court, accordingly, denied Licensee's appeal. (12/24/13 Trial Court Opinion at 4; 2/25/14 Trial Court Pa. R.A.P. 1925(a) Opinion at 5-7.) This appeal followed.[3]

In this Court, Licensee argues (1) that the trial court erred in granting the Department a continuance of the *de novo* hearing; (2) that his constitutional right to communicate with counsel was violated; (3) that the requirements for a license suspension were not satisfied; and (4) that the Implied Consent Law is unconstitutional. None of these arguments has merit.

The decision to grant a continuance is a matter within the trial court's exclusive discretion and can be reversed only on a showing that the trial court abused its discretion. *Commonwealth v. Lutz*, 618 A.2d 1254, 1255 (Pa. Cmwlth. 1992); *Swoyer v. Department of Transportation*, 599 A.2d 710, 712 (Pa. Cmwlth. 1990). To establish an abuse of discretion, Licensee must show "not merely an error of judgment," but that "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will." *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 22 (Pa. Cmwlth. 2010) (quoting *Shaw v. Township of Aston*, 919 A.2d 303 (Pa. Cmwlth. 2007)).

The trial court's decision to grant the Department a continuance of the *de novo* hearing was well within its discretion. The trial court granted the continuance because it concluded that Licensee's late appeal had given the

---

[3] This Court's review of a trial court order sustaining a license suspension based upon a refusal to submit to chemical testing is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 17 n.5 (Pa. Cmwlth. 2010); *Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336, 339 n.1 (Pa. Cmwlth. 2010).

5

Department reason to believe that the August 8, 2013 hearing was limited to the issue of whether the appeal could be allowed *nunc pro tunc*, a matter on which the Department was not required to present evidence. (8/8/13 H.T. at 14-16, R.R. at 26a-28a; 2/25/14 Trial Court Pa. R.A.P. 1925(a) Opinion at 4.) This conclusion was reasonable. Although one of the trial court's two form scheduling orders setting the August 8, 2013 hearing date in this appeal referred to a *de novo* hearing (7/5/13 Scheduling Orders, R.R. at 11a-12a), an initial hearing was required on whether Licensee's late appeal could be allowed *nunc pro tunc* before the appeal could proceed to the merits, *Department of Transportation, Bureau of Driver Licensing v. Schillaci*, 639 A.2d 924, 925-26 (Pa. Cmwlth. 1994), and no such hearing had been scheduled or held.[4]

Licensee's arguments on the merits likewise fail. Indeed, most of these arguments have been expressly rejected by the established precedents of this

---

[4] The Department argues that the trial court erred in allowing the appeal to proceed *nunc pro tunc* and that the license suspension must therefore stand because Licensee's appeal was untimely. A trial court's decision to grant leave to appeal *nunc pro tunc* is reversible only for abuse of discretion. *Rutkowski v. Department of Transportation, Bureau of Driver Licensing*, 987 A.2d 841, 846 (Pa. Cmwlth. 2009). While this is a close case given the vagueness of the statements by the Department representative on which counsel for Licensee relied (8/8/13 H.T. at 12-14, R.R. at 24a-26a), we cannot say that the trial court's decision constitutes an abuse of discretion. *See Rutkowski*, 987 A.2d at 846-47 (grant of *nunc pro tunc* appeal based on misunderstanding by licensee's counsel as a result of Department practices concerning postponements and Department's delay in responding to request to postpone suspension did not constitute abuse of discretion). Contrary to the Department's assertions, Licensee's counsel's testimony concerning his conversation with the Department representative was not hearsay. The issue was what the Department representative said to Licensee's counsel and the fact that the statements were made, not the truth of the statements. Licensee's counsel had personal knowledge of what was said to him.

6

Court and our Supreme Court.[5] The law is clear that Licensee had no constitutional right to communicate with counsel concerning the chemical testing at issue here. Requests to submit to chemical testing under the Implied Consent Law and suspensions of driver's licenses for refusal of chemical testing are civil proceedings, not criminal proceedings. *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 648 A.2d 285, 293 (Pa. 1994); *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 877 (Pa. 1989); *Sitoski*, 11 A.3d at 21; *Witmer v. Department of Transportation, Bureau of Driver Licensing*, 880 A.2d 716, 719, 721 (Pa. Cmwlth. 2005). Because these are civil proceedings, a licensee has no constitutional right to contact or consult with an attorney before deciding to submit to chemical testing. *Ingram*, 648 A.2d at 293; *O'Connell*, 555 A.2d at 877; *Witmer*, 880 A.2d at 721. The arresting officer's refusal to permit Licensee to call his attorney therefore did not violate his federal or state constitutional rights and cannot constitute a ground for invalidating the suspension of his driver's license.

---

[5] Counsel for Licensee does not cite in his brief any of the controlling precedents discussed in this opinion that have rejected the arguments that he asserts in this appeal, although he acknowledges with respect to his constitutional right to counsel argument that "case law holds that the violation of the implied consent law of 75 Pa. C. S. A. Section 1547 is civil, not criminal, in nature so that one charged under that statute does not have a right to Miranda warnings or to consult or be represented by counsel." (Appellant's Br. at 28.) We remind counsel of his obligations to this Court under Pennsylvania Rules of Professional Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law") and 3.3(a)(2) ("A lawyer shall not knowingly … fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel").

The trial court correctly found that all of the requirements for this driver's license suspension were satisfied. To sustain a one-year driver's license suspension under the Implied Consent Law, the Department must prove that the licensee: (1) was placed under arrest for DUI by a police officer who had reasonable grounds to believe that the licensee was operating a vehicle under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his driver's license. 75 Pa. C.S. § 1547(b); *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999); *Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010); *Yourick v. Department of Transportation, Bureau of Driver Licensing*, 965 A.2d 341, 344 (Pa. Cmwlth. 2009) (*en banc*). Because licensees may erroneously believe that they have a right to counsel, the warning must also advise the licensee that he has no right to consult an attorney before deciding whether to submit to the chemical test. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 543-46 (Pa. 1996); *Ingram*, 648 A.2d at 288-95; *O'Connell*, 555 A.2d at 877-88.

Licensee does not dispute that he was placed under arrest for DUI by a police officer who had reasonable grounds to believe that he was operating a vehicle under the influence of alcohol and that the arresting officer requested that he submit to a blood test. (Appellant's Br. at 25.) Nor is there any genuine basis to dispute that the Department met its burden of proof as to the other elements of its *prima facie* case. The Department introduced evidence that Licensee was fully warned that refusal of the blood test would result in the suspension of his driver's license and that he had no right to communicate with counsel before deciding

8

whether to submit to the blood test, and he admitted receiving those warnings. (10/10/13 H.T. at 6-8, 20-21, R.R. at 50a-52a, 64a-65a; Hearing Ex. C-1, D-26 Form, Supp. R.R. at 28b.) The warnings that were given to Licensee are sufficient as a matter of law to meet the warning requirements under Implied Consent Law. *See Ingram*, 648 A.2d at 290-92, 294-95; *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294, 296 n.2, 300-01 (Pa. Cmwlth. 2013); *Witmer*, 880 A.2d at 718 n.3, 720-21. The evidence was also undisputed that Licensee expressed unwillingness to submit to the blood test. (10/10/13 H.T. at 6, 21-24, R.R. at 50a, 65a-68a.) That as a matter of law was sufficient to show a refusal. Anything substantially less than an unqualified, unequivocal assent to submit to testing constitutes a refusal of chemical testing as a matter of law. *McKenna*, 72 A.3d at 298; *Sitoski*, 11 A.3d at 19; *Hudson v. Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa. Cmwlth. 2003).

Licensee argues that his conduct did not constitute a refusal because he was confused about his legal rights. That contention has been specifically and repeatedly rejected by our Supreme Court and this Court. Where, as here, the licensee has received legally sufficient warnings under the Implied Consent Law, his subjective confusion concerning his rights cannot negate his knowing and conscious refusal of chemical testing and is not a defense to a license suspension. *Scott*, 684 A.2d at 546; *McKenna*, 72 A.3d at 298-301; *Sitoski*, 11 A.3d at 20; *Yourick*, 965 A.2d at 345; *Witmer*, 880 A.2d at 719-20; *Hirsch v. Department of Transportation, Bureau of Driver Licensing*, 702 A.2d 375, 377-78 (Pa. Cmwlth. 1997).

Licensee's final contention is that the Implied Consent Law is unconstitutional under the United States Supreme Court's decision in *Missouri v. McNeely*, __U.S.__, 133 S.Ct. 1552 (2013), and because the Vehicle Code places drivers convicted of DUI who have refused testing under the same criminal penalties as those with the highest level of intoxication. In *McNeely*, the Supreme Court addressed when a warrant is constitutionally required to perform a blood test for alcohol without the driver's consent. __U.S. at__, 133 S.Ct. at 1556. That issue has no relevance here. The Implied Consent Law does not provide for nonconsensual chemical tests, *see* 75 Pa. C.S. § 1547(b)(1) (if the licensee refuses chemical testing, "the testing shall not be conducted"), and no blood test was conducted over Licensee's objection. Nothing in *McNeely* suggests that implied consent laws imposing a suspension of driving privileges for failure to submit to chemical testing violate any constitutional rights or trigger any right to counsel. To the contrary, the Court in *McNeely* specifically referred to state implied consent laws with approval. __U.S. at__, 133 S.Ct. at 1566.

The law is also clear that the criminal penalties for DUI under the Vehicle Code cannot support any constitutional challenge to a driver's license suspension under the Implied Consent Law. *Sitoski*, 11 A.3d at 21; *Witmer*, 880 A.2d at 719.

> [T]he sanctions imposed by the Implied Consent Law, *i.e.*, a license suspension, are civil in nature and are wholly unrelated to a criminal prosecution for DUI . . . . Our Courts have consistently held that a licensee may not seek civil remedies, *i.e.*, the reversal of a license suspension, where the licensee's rights as a criminal defendant have been compromised.

10

*Sitoski*, 11 A.3d at 21 (citation omitted). The statutory provision that Licensee contends is unconstitutional because it equates refusal of testing with the highest level of intoxication is Section 3804(c) of the Vehicle Code, setting forth the criminal penalties for DUI convictions, *see* 75 Pa. C.S. § 3804(c), not the Implied Consent Law, Section 1547 of the Vehicle Code. Nothing in Licensee's argument shows any constitutional defect in the Implied Consent Law or his suspension. *See Witmer*, 880 A.2d at 719 (if Section 3804(c) caused any deprivation of licensee's constitutional rights, "his remedy lies in a criminal court through a suppression motion or motion for post-sentence relief to set aside the enhanced penalty," he "may not seek a civil remedy, *i.e.*, reversal of a license suspension").

For the foregoing reasons, we affirm.

_____
JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alan Wade Murray,                       :
                                        :
            Appellant                   :
                                        :
        v.                              :   No. 10 C.D. 2014
                                        :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Driver Licensing              :
                                        :

## **O R D E R**

AND NOW, this 24th day of July, 2014, the order of December 24, 2013 of the Chester County Court of Common Pleas in the above-captioned case is AFFIRMED.


_____
JAMES GARDNER COLINS, Senior Judge