# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Ryan Regula,               :
                   Appellant      :
                             :
             v.               :    No. 57 C.D. 2016
                             :    Submitted:  June 3, 2016
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing       :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER                FILED: September 6, 2016

Jeffrey Ryan Regula (Licensee) appeals from the Order of the Court of Common Pleas of Berks County (common pleas), which denied Licensee's appeal from a one year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Department), pursuant to the Section 1547[1] of the Vehicle Code, known commonly as the Implied Consent Law,

---

[1] 75 Pa. C.S. § 1547. Licensee's operating privilege was suspended pursuant to subsection (b)(1) of the Implied Consent Law, which provides, in relevant part:

> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
> > (i) Except as set forth in subparagraph (ii), for a period of 12 months.

*(Continued…)*

for refusing to submit to a chemical test. On appeal, Licensee argues that common pleas erred and/or abused its discretion "when it refused to consider that the evidence supporting a finding that Licensee's traffic stop was illegal had been suppressed." (Licensee's Br. at 4.) Discerning no error or abuse of discretion, we affirm.

By notice mailed March 23, 2015, the Department notified Licensee that it was suspending his operating privilege for one year pursuant to the Implied Consent Law for refusing a chemical test on March 9, 2015. (Notice of Suspension, Dep't Ex. C-1, at 1.) Licensee appealed the suspension on April 14, 2015, and a de novo hearing was held before common pleas.

At the hearing, the Department presented evidence of Licensee's certified driving records and a DL-26 form, indicating that Licensee had signed the form acknowledging that the form had been read to him. Also introduced was the testimony of the arresting Pennsylvania State Police trooper, Jeffrey Menet (Trooper Menet). Based on Trooper Menet's testimony common pleas found as follows.

On March 9, 2015, Trooper Menet, while on patrol, observed Licensee's "vehicle cross over the double yellow center line of the roadway twice and the fog

---

75 Pa. C.S. § 1547(b)(1)(i). Section 3802(a) of the Vehicle Code provides, in relevant part, as follows:

(a)  General impairment.--

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa. C.S. § 3802(a).

2

line three times." (Op. at 1.) Trooper Menet initiated a traffic stop. Trooper Menet approached the vehicle and identified Licensee as the driver. Trooper Menet detected a strong odor of alcohol coming from Licensee and noticed Licensee's eyes were glassy and bloodshot. Additionally, Licensee's speech was slurred and he admitted to consuming three beers. Upon exiting the vehicle, Licensee had a staggered gait. Based on these observations, Trooper Menet placed Licensee under arrest for suspicion of driving under the influence of alcohol (DUI) and "transported him to the hospital for a blood test." (Id.)

At the hospital, Trooper Menet read verbatim the DL-26 form containing the implied consent warnings to Licensee. Licensee signed the DL-26 form, but "vacillated about whether he would actually submit to the blood test." (Op. at 2.) Licensee "asked to call his father." (Id.) A phlebotomist was available to draw Licensee's blood. When the phlebotomist asked Licensee to roll up his sleeve, Licensee "said that he would not do the test." (Id.) Trooper Menet then deemed Licensee to have refused to submit to chemical testing and released him.

Licensee did not testify at the hearing. Licensee did elicit testimony from Trooper Menet on cross-examination in which Trooper Menet agreed that he had previously testified at a pretrial hearing on Licensee's DUI criminal matter and that a dashboard camera video had been submitted at that hearing. Licensee's counsel indicated that the judge in the underlying DUI criminal case granted Licensee's Motion for Suppression of Evidence (Motion to Suppress) and dismissed the DUI criminal case. Licensee requested the court to take judicial notice of and admit as evidence the granted Motion to Suppress and the dismissal of his DUI criminal case. The Department objected on the grounds that the evidence from Licensee's DUI criminal proceedings is not relevant to his civil license suspension matter.

3

Common pleas sustained the objection and did not admit evidence from the DUI criminal case concluding that it was not relevant to the civil license suspension proceeding. Common pleas denied Licensee's appeal and reinstated the license suspension. (Id.)

Licensee filed a timely Notice of Appeal. Common pleas directed Licensee to file a Concise Statement of Errors Complained of on Appeal (Statement) pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.[2] Licensee filed a Statement on February 9, 2016, in which he argued that common pleas erred "when it refused to consider that the evidence supporting a finding that Appellant's traffic stop was illegal had been suppressed." (Statement, R.R. at 12.) On March 14, 2016, common pleas issued an opinion explaining its denial of Licensee's appeal. Common pleas did not find evidence related to Licensee's DUI criminal case relevant to his civil license suspension matter under the Implied Consent Law, citing Kachurak v. Department of Transportation, Bureau of Driver Licensing, 913 A.2d 984, 986 (Pa. Cmwlth. 2006), which explained that:

> "[t]he law is clear that the legality of the underlying DUI arrest is of no moment in a license suspension that results from a refusal to submit to chemical testing. *It is irrelevant whether [the officer] had probable cause for executing the traffic stop. An illegal arrest is not an impediment to a license suspension* for refusing a chemical blood test." [Dep't of Transp. v.] Wysocki, . . . 535 A.2d [77,] . . . 79 [(Pa. 1987)].

---

[2] Pa. R.A.P. 1925(b). Rule 1925(b) provides, in relevant part:

If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Id.

4

(Op. at 4 (quoting Kachurak, 913 A.2d at 986) (footnote omitted) (emphasis added).)  Licensee now appeals to this Court.

On appeal,[3] Licensee contends that common pleas abused its discretion when it "refused to consider that the evidence supporting a finding that Licensee's traffic stop was illegal had been suppressed."  (Licensee's Br. at 4.)  Additionally, Licensee argues that the Implied Consent Law violates both the Fourth Amendment to the United States Constitution[4] and Article I, Section 8 of the Pennsylvania Constitution[5] because, as interpreted by Pennsylvania Courts, it does not require a *lawful traffic stop* as a prerequisite to a valid license suspension and, therefore, it allows for unreasonable seizures of drivers.  Licensee states that the

---

[3] This Court's review in a license suspension case is "to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion."  Nornhold v. Dep't of Transp., Bureau of Driver Licensing, 881 A.2d 59, 62 n.4 (Pa. Cmwlth. 2005).

[4] The Fourth Amendment to United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[5] Article I, Section 8 of the Pennsylvania Constitution (relating to security from searches and seizures) provides:

> The people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed by the affiant.

Pa. Const. art. I, § 8.

5

Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution are coterminous, because they "both allow for an investigative detention in the form of a vehicle stop based on reasonable suspicion." (Licensee's Br. at 11-12.) Licensee argues that, in not requiring that the *initiating traffic stop* be legal, the Implied Consent Law "renders the Fourth Amendment ineffective in deterring police misconduct *as it relates to license suspensions*." (Licensee's Br. at 12 (emphasis added).)

Specifically, Licensee focuses on the facts that certain evidence in the DUI criminal matter stemming from the traffic stop initiated by Trooper Menet had been suppressed and the criminal charges against him dismissed. Licensee acknowledges that courts of this Commonwealth have considered "a license suspension issued by the Department" as "civil in nature and does not require a lawful traffic stop pursuant to reasonable suspicion." (Licensee's Br. at 10.) However, Licensee argues that the evidence from the DUI criminal proceedings supporting a finding that the traffic stop was illegal should be admitted because "the suspension of a license for a refusal to test is not civil in the traditional legal sense as it involves action against a citizen . . . pursuant to a police officer's exercise of law enforcement authority." (Id.) Licensee explains that, as a Pennsylvania citizen whose underlying arrest had been determined to be unlawful, he has a right to be free from arbitrary police action in the form of the suspension of his license. Essentially, Licensee argues that the current interpretations of the Implied Consent Law defeat the purpose of the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution.

In response, the Department argues that common pleas did not abuse its discretion when it denied Licensee's request to admit evidence of the outcome of

his DUI criminal proceedings. The Department, citing Commonwealth v. Miller, 664 A.2d 1310, 1320 (Pa. 1995), notes that common pleas has discretion over the decisions on the conduct of the hearing and the admissibility or relevance of evidence, and those decisions will be upheld unless there is an abuse of discretion. Citing, *inter alia*, Wysocki and Sitoski v. Department of Transportation, Bureau of Driver Licensing, 11 A.3d 12 (Pa. Cmwlth. 2010), the Department argues that it is well-settled that the evidence concerning a licensee's DUI criminal proceedings is not relevant to a licensee's appeal of a license suspension under the Implied Consent Law. Evidence concerning a licensee's DUI criminal proceedings is not admissible in a civil license suspension matter because "[e]vidence that is not relevant is not admissible." Rule 402 of the Pennsylvania Rules of Evidence, Pa. R.E. 402. Additionally, the Department argues that neither the Fourth Amendment to the United States Constitution, nor Article I, Section 8 of the Pennsylvania Constitution required common pleas to consider evidence of the outcome of Licensee's underlying DUI criminal proceedings.[6]

---

[6] The Department separately addresses Article I, Section 8 of the Pennsylvania Constitution by citing Osselburn v. Department of Transportation, Bureau of Driver Licensing, 970 A.2d 534 (Pa. Cmwlth. 2009). In Osselburn, this Court addressed a licensee's argument based on Article I, Section 8 (separate and apart from the Fourth Amendment) that the arresting officer's traffic stop was a result of animus and a violation of his expectation of privacy in his vehicle. Although this Court recognized in Osselburn that "to date, the enhanced privacy protections of Article I, Section 8 have been successfully invoked only in the context of criminal prosecutions," we also indicated that Article I, Section 8 could possibly provide a viable challenge to an initial stop on the basis of a violation of privacy. Osselburn, 970 A.2d at 539-40. However, because the licensee in Osselburn presented as evidence the officer's dashboard camera video, which showed a violation of the Vehicle Code and supported the officer's testimony, we held in Osselburn "that Article I, Section 8 does not protect citizens from being stopped for careless driving." Osselburn, 970 A.2d at 540. Unlike the licensee in Osselburn, Licensee here is not raising an independent Article I, Section 8 privacy argument but is instead arguing that this provision is coterminous with the Fourth Amendment. Moreover, Trooper Menet's credited testimony indicates that Licensee, while driving, was having difficulty staying

*(Continued…)*

7

The authority of police officers to conduct a traffic stop in Pennsylvania to investigate a potential DUI is statutory and is found at Section 6308(b) of the Vehicle Code, which provides:

> **(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or *has reasonable suspicion that a violation of this title is occurring or has occurred*, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa. C.S. § 6308(b) (emphasis added). The current language of Section 6308(b) reflects the General Assembly's decision to amend the language in 2003, which became effective on February 1, 2004.[7] Prior to February 1, 2004, a police officer could enforce the Vehicle Code when "engaged in a systematic program of checking vehicles or drivers" or upon "articulable and reasonable grounds" to suspect a violation of the Vehicle Code.[8] The Supreme Court of Pennsylvania interpreted the "articulable and reasonable grounds" standard as the equivalent to probable cause to believe that a violation of the Vehicle Code is occurring or has occurred. See Com. v. Whitmyer, 668 A.2d 1113, 1116 (Pa. 1995), superseded by statute, Act of September 30, 2003, P.L. 120, as recognized in Com. v. Holmes, 14

---

in his lane, crossing the double yellow and fog lines on several occasions, and, unlike in Osselburn, Licensee did not present any evidence to challenge the officer's testimony or motive. Licensee instead requests that common pleas "take judicial notice and admit evidence that after that pretrial hearing, [Licensee's] motion to suppress was granted and the criminal case ultimately dismissed." (Op. at 2.)

[7] Act of September 30, 2003, P.L. 120, 75 Pa. C.S § 6308(b).

[8] Act of February 2, 1990, P.L 2, 75 Pa. C.S. § 6308(b).

A.3d 89 (Pa. 2011) (concluding that the "semantic difference" between the probable cause standard and the "articulable and reasonable grounds" are, when balancing the underlying interests, a "distinction without a difference").

Thus, prior to 2004, Pennsylvania law included two distinct standards for traffic stops: probable cause was required when the basis of the stop was a violation of the Vehicle Code; and reasonable suspicion, the Fourth Amendment standard, was required for a stop of the basis of suspected criminal activity. See Delaware v. Prouse, 440 U.S. 648, 663 (1979) (stopping a vehicle absent articulable and reasonable suspicion of wrongdoing is unreasonable under the Fourth Amendment). "[T]his distinction was directly at issue when the [General Assembly] sought to amend Section 6308(b) to its current form." Com. v. Feczko, 10 A.3d 1285, 1289 (Pa. Super. 2010). The Superior Court extensively reviewed the legislative history of the amendment and concluded:

> Clearly, the [General Assembly]'s intent was to permit officers who suspect that an operator of a vehicle has committed a serious offense, such as DUI or homicide by vehicle, to stop the vehicle based upon a reasonable suspicion rather than the heightened standard of probable cause. And the legislature reasoned that such an amendment would be constitutional since existing constitutional precedent actually permits police officers to stop a vehicle based upon reasonable suspicion that criminal activity is afoot.

Com. v. Sands, 887 A.2d 261, 268 (Pa. Super. 2005); see also Com. v. Chase, 960 A.2d 108, 115 (Pa. 2008) ("stating that "[t]he amendment of [Section] 6308(b) accomplished the elimination of a unique and higher statutory threshold for stops for Vehicle Code offenses . . . ").

With this back drop, which sets the statutory prerequisite for police enforcement of the entire Vehicle Code, we examine the Implied Consent Law. It

9

has long been held that "[p]ermission to operate a motor vehicle upon the highways of this Commonwealth is a privilege subject to such conditions as the legislature may see fit to impose." Wysocki, 535 A.2d at 78 (citing Com. v. Funk, 186 A.2d 65 (Pa. 1936)). The Implied Consent Law sets forth one of those conditions: the "implied consent" to submit to chemical testing. The Implied Consent Law provides in pertinent part:

> **(a) General rule.**-- Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
>     (1) in violation of section . . . 3802 (relating to driving under the influence of alcohol or a controlled substance). . .
>     . . . .
>
> **(b) Suspension for refusal.--**
>     (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>         (i) . . . for a period of 12 months.
>         . . . .
>     (2) It shall be the duty of the police officer to inform the person that:
>         (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing.
>         . . . .
>     (3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

75 Pa. C.S. § 1547(a), (b).

In order to sustain the appeal of a license suspension under the Implied Consent Law:

> The Department must prove at a statutory appeal hearing that the licensee (1) was arrested for driving while under the influence by a police officer who had *reasonable grounds* to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension.

Zwibel v. Dep't of Transp., Bureau of Driver Licensing, 832 A.2d 599, 604 (Pa. Cmwlth. 2003) (emphasis in original). With regard to the first prong of this burden,

> [a]n officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol "if a reasonable person in the position of a police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol." McCallum v. Commonwealth, . . . 592 A.2d 820, 822 ([Pa. Cmwlth.] 1991). The issue of reasonable grounds is decided on a case-by-case basis, and an officer's reasonable grounds are not rendered void if it is later discovered that the officer's belief was erroneous. Id. The officer's belief must only be objective in light of the surrounding circumstances. Moreover, the existence of reasonable alternative conclusions that may be made from the circumstances does not necessarily render the officer's belief unreasonable. Id.

Id. The standard of reasonable grounds to support a license suspension is akin to the reasonable suspicion standard of the Fourth Amendment and "does not rise to the level of probable cause required for a criminal prosecution." Banner v. Dep't of Transp., Bureau of Driver Licensing, 737 A.2d 1203, 1207 (Pa. 1999); compare Terry v. Ohio, 392 U.S. 1, 21, 30 (1968) (requiring police officers to "point to specific and articulable facts which, taken together with rational inferences from

those facts, . . . leads him reasonably to conclude in light of his experience that criminal activity may be afoot" and that such facts must "be judged against an objective standard"), with Banner, 737 A.2d at 1207 ("[r]easonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor").

Licensee does not appear to dispute that the Department met its burden under the Implied Consent Law, or that Trooper Menet had reasonable grounds to make an arrest for DUI. Indeed, that would be problematic given Trooper Menet's credible testimony that Licensee had: a "strong odor of alcoholic beverage emanating from him"; later admitted to consuming three beers; and had "glassy bloodshot eyes and slurred speech." (Hr'g Tr. at 5.) Trooper Menet also testified that Licensee, upon exiting his vehicle, "had a staggered gait while walking to the bed of his truck." (Id. at 6.) Instead, Licensee argues that common pleas should have admitted into evidence the granted Motion to Suppress and the dismissal of his DUI criminal case.

Both the Supreme Court and this Court consistently have held that the result of a *criminal* DUI proceeding and the legality of the underlying traffic stop are not relevant to an appeal of a *civil* license suspension matter based on a licensee's refusal to submit to a chemical test in accordance with the Implied Consent Law. In Wysocki, the Pennsylvania Supreme Court addressed a licensee's Fourth Amendment challenge to the Implied Consent Law. There, the licensee, who was stopped at a roadblock for a "traffic check," had his criminal case dismissed for lack of evidence after a preliminary hearing. Wysocki, 535 A.2d at 78. The licensee argued that because his DUI arrest was unlawful due to an illegal stop, the

12

Fourth Amendment exclusionary rule[9] should apply to the civil license suspension matter. Id. at 79. The Supreme Court rejected licensee's argument, explaining:

> Where the results of the test are being used as evidence in a criminal trial, it is properly excluded in that proceeding if it is found to be the fruit of an illegal arrest. The basis for employing the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. Terry v. Ohio, 392 U.S. 1 . . . (1968); Linkletter v. Walker, 381 U.S. 618 . . . (1965); Mapp v. Ohio, 367 U.S. 643 . . . (1961). Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. *The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings.* The only fact necessary to the administrative determination is the driver's refusal to comply with the breathalyzer request after being taken into custody.
>
> The conclusion that the illegality of the initial decision does not in and of itself preclude the suspension of the operating privileges does not end the instant inquiry. Although [the Implied Consent Law] established an "implied consent" on the part of the motorist, subsection (a)(1) [of the Implied Consent Law] authorizes a request for a breathalyzer test only "if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle: (1) while under the influence of alcohol…" Thus, although the fact that the initial stop may have been improper would not necessarily prevent a suspension of license where there was a subsequent refusal to submit to a breathalyzer test, such a suspension will not be allowed if the officer's request was not supported by reasonable grounds for the officer to have believed that the person was under the influence of alcohol.

Wysocki, 535 A.2d 79-80 (emphasis added).

---

[9] The Fourth Amendment exclusionary rule succinctly holds that evidence obtained by the government during, or as a result of, an unlawful search "c[an] not constitute proof against the victim of the search." Wong Sun v. United States, 371 U.S. 471, 484 (1963) (citing Weeks v. United States, 232 U.S. 383 (1914)).

Courts of this Commonwealth have consistently followed and cited Wysocki for a variety of principles distinguishing between the civil license suspension and the criminal DUI proceedings. See Sitoski, 11 A.3d at 21 ("[o]ur Courts have consistently held that a licensee may not seek civil remedies, i.e., the reversal of a license suspension, where the licensee's rights as a criminal defendant have been compromised"); Witmer v. Dep't of Transp., Bureau of Driver Licensing, 880 A.2d 716, 719 (Pa. Cmwlth. 2005) (holding that the sanctions imposed by the Implied Consent Law, i.e., a license suspension, "are civil in nature and are wholly unrelated to the consequences of a DUI criminal prosecution"); Kachurak, 913 A.2d at 986 ("[t]he law is clear that the legality of the underlying DUI arrest is of no moment" in a civil appeal of the license suspension and that "[i]t is irrelevant whether the arresting officer had *probable cause* for executing the traffic stop" (emphasis added)). Given the extensive precedent in this area, common pleas did not err or abuse its discretion in excluding the evidence related to Licensee's DUI criminal proceedings because it is not relevant to this civil license suspension matter.

Licensee claims that *this interpretation* of the Implied Consent Law violates both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution "because it allows for unreasonable seizures as a result of the fact that Pennsylvania Courts have interpreted the Law to not require a lawful traffic stop as a prerequisite to a valid license suspension." (Licensee's Br. at 7.) Licensee argues that the "reasonable suspicion" requirement for initiating a stop would "further protect against arbitrary seizures by police, which are clearly condemned by the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution." (Id. at 14.) Licensee claims that if reasonable

14

suspicion for a lawful traffic stop need not be demonstrated at a civil license suspension proceeding, then police will be encouraged to conduct arbitrary investigatory stops. For this reason, the dismissal of Licensee's DUI criminal case, and the granted Motion to Suppress, is relevant to the inquiry regarding whether it was a lawful traffic stop.

Licensee raises some interesting constitutional issues. Efforts to combat drunk driving in Pennsylvania and around the country, including the implementation of implied consent laws, have been remarkably effective. "As of the early 1980's [sic], the number of annual fatalities averaged 25,000; by 2014, the most recent year for which statistics are available, the number had fallen to below 10,000." Birchfield v. North Dakota, ___ U.S. ___, ___, 136 S. Ct. 2160, 2169 (2016) (citing Presidential Commission on Drunk Driving 1 (Nov. 1983); NHTSA, Traffic Safety Facts, 2014 Data, Alcohol–Impaired Driving 2 (No. 812231, Dec. 2015) (NHTSA, 2014 Alcohol–Impaired Driving)). Yet, by concluding that the Implied Consent Law is not hindered even if the police officer who requested chemical evidence had no legal justification to stop a vehicle, it appears that the Implied Consent Law, as interpreted by Pennsylvania courts, has been expanded from providing that all drivers in the Commonwealth impliedly consent to a search of one's breath, blood or urine, to providing that all drivers also *impliedly consent to an illegal seizure* for purposes of civil license suspensions. Such a conclusion seems to be at conflict with generalized principles on the role of the Fourth Amendment in civil proceedings. See New Jersey v. T.L.O., 469 U.S. 325, 335 (1985) (stating that because individual privacy and personal security is infringed regardless of whether the "government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards, . .

15

. it would be anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior" (internal quotations omitted).) The fact that Trooper Menet developed the reasonable grounds to believe that Licensee was operating the vehicle while under the influence of alcohol through observations made, at least in part, from a vantage point he unlawfully occupied is concerning.

Our sister states that have examined this issue have split on whether a legal stop is a prerequisite for a license suspension pursuant to implied consent laws. See, e.g., Hanson v. Colo. Dep't of Revenue, Div. of Motor Vehicles, 328 P.3d 122, 126 (Colo. 2014) (holding that because "the exclusionary rule does not apply in driver's license revocation proceedings" the court need not assess whether the officer's contact with driver was lawful); Lopez v. Dir., N.H. Div. of Motor Vehicles, 761 A.2d 448, 450 (N.H 2000) ("lawfulness of the stop is not necessary to sustain a valid license suspension" under New Hampshire's implied consent law); Riche v. Dir. of Revenue, 987 S.W.2d 331, 336 (Mo. 1999) (concluding that the Missouri implied consent law does not require the "Court to impose the 'probable or reasonable cause to stop' requirement"); State v. Brabson, 976 S.W.2d 182, 185 (Tex. Crim. App. 1998) ("[s]ince an exclusionary rule does not apply to an administrative proceeding to revoke a person's driver's license, then there was no need for the administrative judge to make findings on the legality of appellee's arrest"); Powell v. Sec'y of State, 614 A.2d 1303, 1306 (Me. 1992) (concluding that the Fourth Amendment's exclusionary rule should not be applied to civil license suspensions). But see, e.g., State v. Taeger, 781 N.W.2d 560, 566 (Iowa 2010) (interpreting Iowa's implied consent law as including "a mandatory exclusionary rule, which prevents the introduction of evidence in a civil license

proceeding that has been suppressed in the parallel criminal proceeding"); State v. Lussier, 757 A.2d 1017, 1026–27 (Vt. 2000) (applying the exclusionary rule to a license suspension proceeding "to protect the core value of privacy embraced in Article 11 [of the state constitution], to promote the public's trust in the judicial system, and to assure that unlawful police conduct is not encouraged"); Watford v. Ohio Bur. of Motor Vehicles, 674 N.E.2d 776, 778 (Ohio Ct. App. 1996) ("a lawful arrest, including a constitutional stop, must take place before a refusal to submit to chemical tests of one's blood, breath, urine or other bodily substances triggers a license suspension"); Pooler v. Motor Vehicles Div., 755 P.2d 701, 703 (Or. 1988) (without a legal arrest there can be no request to take a breath test which may lead to a lawful license suspension and that "if the stop [is] unlawful, evidence obtained as a result of the stop should be excluded").

While the United States Supreme Court has not directly addressed this issue, it has recently shown its willingness to impose limits on implied consent laws based on the Fourth Amendment. In Missouri v. McNeely, ___U.S. ___, ___, 133 S. Ct. 1552, 1563 (2013), the Court held that the exigent circumstances exception to the Fourth Amendment's warrant requirement cannot serve as a blanket exception in all drunk driving cases. A plurality of the Court expressed no misgivings about the impact of its holding, stating that "[w]e are aware of no evidence indicating that restrictions on nonconsensual blood testing have compromised drunk-driving enforcement efforts in the States that have them." McNeely, ___ U.S. at ___, 133 S. Ct. at 1567. More recently in Birchfield, the Court applied further limitations to state implied consent laws. While not questioning the civil consequences imposed by state implied consent laws, the Court signaled its continued willingness to apply a Fourth Amendment analysis to

17

such laws.  See Birchfield, ___U.S. at ___, 136 S. Ct. at 2181 (holding that implied consent laws that impose criminal penalties for refusing to submit to a blood test violates the Fourth Amendment when such searches are not authorized by a warrant signed by a detached magistrate).

Furthermore, we observe that neither Wysocki nor its progeny addressed the statutory requirements of Section 6308(b) of the Vehicle Code, nor the impact of the 2004 amendment, which occurred after Wysocki was decided.  While the reasonable suspicion standard articulated in Section 6308(b) now aligns with the requirements of the Fourth Amendment, Section 6308(b) provides a separate analytical framework since the provision applies equally to the entire Vehicle Code and the requirements of the Fourth Amendment are often "less clear" in the civil context.  Luminella v. Marcocci, 814 A.2d 711, 720 (Pa. Super. 2002) (addressing the Fourth Amendment's application to the mandatory submission of blood in child custody cases and citing United States v. Int'l Bus. Machines Corp., 83 F.R.D. 97, 103 (S.D.N.Y. 1979)).

Notwithstanding the above questions and the continued development of the law at the state and federal levels, the Pennsylvania Supreme Court has spoken and this Court is bound by its decision.  For the foregoing reasons, we affirm the order of common pleas.

_____
**RENÉE COHN JUBELIRER,** Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Ryan Regula,             :
                Appellant     :
                                 :
               v.           :    No. 57 C.D. 2016
                                 :
Commonwealth of Pennsylvania,  :
Department of Transportation,     :
Bureau of Driver Licensing        :

# **O R D E R**

    **NOW**, September 6, 2016, the Order of the Court of Common Pleas of Berks County, entered in the above-captioned matter, is **AFFIRMED**.


                                _____
                                  **RENÉE COHN JUBELIRER,** Judge