# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James Dillon, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1661 C.D. 2017 |
| | : | Submitted: April 20, 2018 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: November 6, 2018


James Dillon (Licensee) appeals from an order of the Court of Common Pleas of Greene County (trial court) that denied his statutory appeal from a one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Department), pursuant to Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547, known commonly as the Implied Consent Law, for refusing to submit to a chemical test. Licensee asserts that the trial court erred in determining that reasonable grounds existed for the traffic stop and the court has candidly admitted to this error in its opinion filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. Upon review, we affirm the trial court's order upholding the suspension.

# I. Background

On July 18, 2016, the Department mailed Licensee an Official Notice of Suspension of Driving Privilege for violating Section 1547(b) of the Vehicle Code, 75 Pa. C.S. §1547(b),[1] for refusing a chemical test on July 2, 2016. Licensee timely appealed the suspension to the trial court and the trial court held a *de novo* hearing. At the hearing, Pennsylvania State Trooper Kevin B. Kulka (Trooper) and Licensee both testified.

Trooper testified that, on July 2, 2016, he effected a traffic stop because Licensee "was weaving in the roadway." Original Record (O.R.), Notes of Testimony (N.T.), 11/16/17, at 5. He did not recall observing any other vehicle code violations before making the stop. N.T. at 5. Trooper approached Licensee's vehicle and asked for his "license, registration, and proof of insurance." N.T. at 6. Trooper testified Licensee had trouble finding his license in a stack of cards and he passed over his license several times. N.T. at 6. Trooper made him aware that the license was in the stack. N.T. at 6. Trooper asked Licensee if he had been drinking. N.T. at 7. Licensee responded he had a few drinks with dinner. N.T. at 7. After refreshing his memory by reading his arrest report, Trooper clarified that Licensee stated he had a few beers with dinner. N.T. at 7. Trooper observed that Licensee had

---

[1] This section provides:

> (b) Suspension for refusal.—
>
> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
> (i) Except as set forth in subparagraph (ii), for a period of 12 months.

"bloodshot glassy eyes." N.T. at 8. Trooper detected "a strong odor of alcoholic beverages coming from his breath." N.T. at 8. Trooper also noticed Licensee's speech was a "little bit slurred." N.T. at 8.

Trooper asked Licensee to submit to a preliminary breathalyzer test. N.T. at 8. Licensee refused. N.T. at 9. Trooper placed Licensee under arrest for driving under the influence (DUI). N.T. at 9. Trooper transported Licensee to the State Police barracks for a breathalyzer test. N.T. at 9-10. Upon arriving at the barracks, Trooper testified he read the implied consent warnings contained on the DL-26 form to Licensee. N.T. at 11. After the warnings were read, Licensee refused the Trooper's request for a breathalyzer test. N.T. at 12-13.

On cross-examination, Trooper acknowledged that he had previously testified at a criminal suppression hearing in Licensee's DUI criminal matter. N.T. at 13. Trooper admitted that the same trial court hearing the license suspension appeal had ruled that the traffic stop was unconstitutional in the prior criminal suppression hearing. N.T. at 13-14. More particularly, Trooper agreed that the trial court ruled that Trooper "had no right to stop [Licensee's] car." N.T. at 14. Trooper could not recall whether Licensee refused to sign the DL-26 form. N.T. at 16.

Licensee testified he was never shown the DL-26 form. N.T. at 23. According to Licensee, the four warnings on the form were never read to him. N.T. at 24. He testified that he was not told that anything would happen to him if he refused to sign the DL-26 form. N.T. at 24. On cross-examination, Licensee admitted that he refused to take a breathalyzer test because he felt that he was not intoxicated and Trooper pulled him over for no reason. N.T. at 24. Licensee admitted to having "had a couple of beers with dinner." N.T. at 25.

3

The Department admitted the DL-26 form into evidence without objection. N.T. at 12; O.R., Commonwealth Ex. No. 1. The DL-26 form indicates that Licensee refused to acknowledge that the form was read to him. O.R., Commonwealth Ex. No. 1.

During closing arguments, counsel for Licensee referenced a dashboard camera (dash-cam) video of the traffic stop that the trial court viewed in the prior criminal suppression hearing. However, counsel for Licensee did not play the video or offer it into evidence during the license suspension hearing.

Based on the testimony and evidence presented, the trial court determined that Licensee knowingly refused to submit to a breathalyzer test and denied Licensee's appeal. Trial Court Order, 10/16/17, at 1. Licensee appealed and, at the trial court's direction, filed a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

In the statement, Licensee asserted that the trial court erred in upholding the license suspension because the traffic stop was held to have been unconstitutional. Consequently, the Department should not be permitted to benefit from the unconstitutional action of the Trooper. Furthermore, Licensee claimed that Trooper's testimony about his car weaving was belied by the dash-cam video.

In response, the trial court issued a Pa. R.A.P. 1925(a) opinion candidly admitting that it committed an error of law. The trial court explained Licensee was arrested and charged with DUI, which led to both criminal and civil consequences. With regard to the criminal charges, the trial court held a suppression hearing, in which the court determined that the Trooper lacked probable cause or reasonable suspicion to make the stop and suppressed all evidence. At the civil license suspension hearing, the trial court considered whether Licensee refused to submit to

4

chemical testing such that his driver's license should be suspended. The trial court determined that Licensee refused to submit to a breathalyzer and, as a result, was subject to the license suspension. Upon further review, the trial court believes it erred because it did not consider all the elements necessary to support a license suspension based on a refusal to submit to chemical testing.

The trial court opined that, in order to sustain the appeal of a license suspension under the Implied Consent Law, the Department must prove four elements. Trial Court Opinion, 1/4/2018, at 5 (citing *Regula v. Department of Transportation, Bureau of Driver Licensing*, 146 A.3d 836, 842 (Pa. Cmwlth. 2016), *appeal denied*, 169 A.3d 9 (Pa. 2017)). The first element the Department must prove is that the licensee "was arrested for driving while under the influence by a police officer who had *reasonable grounds* to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance . . . ." *Id.* (quoting *Regula*, 146 A.3d at 842 (emphasis in original)). The trial court concluded that the first element was not met in this case.[2] *Id.* at 5. At the license suspension hearing, Trooper testified that he observed Licensee's vehicle "weaving in the roadway." *Id.* at 8; *see* N.T. at 5. However, the trial court recalled that, at the criminal suppression hearing, a video dash-cam, which recorded Trooper following Licensee for seven miles, failed to establish any "reasonable grounds" for the traffic stop and refuted Trooper's testimony that Licensee was weaving. Trial Court Opinion, at 7. Thus, the trial court asked this Court to rule based on the newly found facts regarding the illegality of the stop or remand for a further determination. *Id.* at 8.

---

[2] The trial court determined that the other three elements were proven by preponderance of the evidence. Trial Court Opinion, at 6.

5

## II. Issues

In this appeal,[3] Licensee argues that this Court should reverse the trial court's order upholding the license suspension based on the trial court's admitted error. Licensee maintains that the Department did not meet its burden of proving reasonable grounds for the stop. The dash-cam video, which the trial court suppressed at the suppression hearing, belied Trooper's testimony that Licensee was weaving and refuted any reasonable suspicion or probable cause that the traffic stop was warranted.

The Department responds that the trial court erred as a matter of law in relying upon its knowledge of the unadmitted dash-cam video in determining that Trooper did not have reasonable grounds to effect a traffic stop. The trial court was not permitted to take judicial notice of the dash-cam video or substitute its knowledge of the contents of the unadmitted video for competent evidence. The only evidence in the record with regard to the reason Trooper effected a traffic stop is Trooper's testimony.

Furthermore, the Department contends that the trial court erred in determining Trooper needed reasonable grounds to stop Licensee's vehicle. According to the Department, an officer may develop reasonable grounds to believe that a licensee was DUI *after* a stop is made. The legality of a traffic stop is not at issue in an appeal of a license suspension imposed for refusing chemical testing.

---

[3] Our review in a license suspension case is "to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion." *Regula*, 146 A.3d at 839 n.3 (quoting *Nornhold v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 59, 62 n.4 (Pa. Cmwlth. 2005)).

6

## III. Discussion

In *Regula*, this Court set forth the following four-prong test in order to sustain the appeal of a license suspension under the Implied Consent Law:

> The Department must prove at a statutory appeal hearing that the licensee (1) was arrested for driving while under the influence by a police officer who had *reasonable grounds* to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension.

146 A.3d at 842 (quoting *Zwibel v. Department of Transportation, Bureau of Driver Licensing*, 832 A.2d 599, 604 (Pa. Cmwlth. 2003) (emphasis in original)). With regard to the first prong, we opined:

> An officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol "if a reasonable person in the position of a police officer, viewing the facts and circumstances as they appeared to the officer at the time, could conclude that the driver drove his car while under the influence of alcohol." *McCallum v. Commonwealth*, [592 A.2d 820, 822 (Pa. Cmwlth. 1991)]. The issue of reasonable grounds is decided on a case-by-case basis, and an officer's reasonable grounds are not rendered void if it is later discovered that the officer's belief was erroneous. *Id.* The officer's belief must only be objective in light of the surrounding circumstances. Moreover, the existence of reasonable alternative conclusions that may be made from the circumstances does not necessarily render the officer's belief unreasonable. *Id.*

*Id.* at 842-43 (quoting *Zwibel*, 832 A.2d at 604).

In *Department of Transportation v. Wysocki*, 535 A.2d 77, 79 (Pa. 1987), our Supreme Court delineated the differences between civil license

7

suspension appeals and criminal DUI proceedings. In *Wysocki*, the licensee was arrested at a DUI checkpoint and refused to consent to a breathalyzer test. *Wysocki*, 535 A.2d at 78. Based on his refusal, his license was suspended under the Implied Consent Law. *Id.* In the criminal DUI proceedings, it was determined that the DUI arrest was unlawful due to an illegal stop. *Id.* at 79. In the civil license suspension appeal, the licensee argued that, because his DUI arrest was unlawful, the Fourth Amendment exclusionary rule should apply to the civil license suspension matter. *Id.* at 79. The Supreme Court rejected the contention holding:

> Properly viewed, the issue in the instant case . . . is the power of the Department . . . to suspend a driver's license, which is conferred by the [I]mplied [C]onsent [L]aw. *That authority is not conditioned on the validity of the arrest* which gives rise to the request for a breathalyzer test . . . . Where the driver refuses to take a breathalyzer test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. *The only fact necessary to the administrative determination is the driver's refusal to comply with the breathalyzer request after being taken into custody.*

*Id.* at 79-80 (emphasis added).

This Court has consistently applied *Wysocki* in holding that the lawfulness of a DUI arrest is irrelevant to a determination of whether the licensee's operating privilege was properly suspended under the Implied Consent Law. *See Regula*, 146 A.3d at 846 (holding that it was not an abuse of discretion for a trial court to exclude evidence of the licensee's granted suppression motion and dismissal of the underlying criminal DUI charges in the civil license suspension matter); *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12,

8

21 (Pa. Cmwlth. 2010) ("Our Courts have consistently held that a licensee may not seek civil remedies, i.e., the reversal of a license suspension, where the licensee's rights as a criminal defendant have been compromised."); *Kachurak v. Department of Transportation, Bureau of Driver Licensing*, 913 A.2d 982, 986 (Pa. Cmwlth. 2006) ("The law is clear that the legality of the underlying DUI arrest is of no moment" in a civil appeal of the license suspension and that "[i]t is irrelevant whether the arresting officer had probable cause for executing the traffic stop"; "[a]n illegal arrest is not an impediment to a license suspension for refusing a chemical blood test."); *Witmer v. Department of Transportation, Bureau of Driver Licensing*, 880 A.2d 716, 719 (Pa. Cmwlth. 2005), *appeal denied*, 920 A.2d 835 (Pa. 2007), (holding that the sanctions imposed by the Implied Consent Law, i.e., a license suspension, "are civil in nature and wholly unrelated to the consequences of a criminal DUI prosecution").

The pointed issue here is whether Trooper had reasonable grounds to believe that Licensee was operating his vehicle while under the influence. *Regula*, 146 A.3d at 842. Initially, the trial court sustained the license suspension having adopted Trooper's version of the facts that knowingly Licensee refused to submit to a breathalyzer test. *See* Trial Court Order, at 1. But, in the Pa. R.A.P. 1925(a) opinion that followed, the trial court opined that it erred because Trooper did not have "reasonable grounds . . . for the initial stop." Trial Court Opinion, at 7. In reaching this conclusion, the trial court relied on its knowledge of the dash-cam video, which it viewed in the criminal proceedings. *Id.* The dash-cam video was not shown during the license suspension hearing or admitted into evidence. According to the trial court, the video recorded Trooper following Licensee for seven miles and refuted Trooper's testimony that Licensee "was weaving in the

9

roadway." *Id.* at 8. Although the trial court determined that the video undermined Trooper's observations regarding weaving, the trial court did not reject or discredit Trooper's testimony in its entirety. In fact, the trial court clearly relied on Trooper's version of the facts in finding that the Department met the other elements of *Regula*. *See id.* at 6.

Setting aside the apparent problems with the trial court's act of taking "judicial notice"[4] of suppressed evidence not of record in the license suspension appeal and/or imparting its knowledge of the same, we believe the trial court's rationale for reversal is nevertheless flawed. *Regula* holds that the Department must prove that the licensee "was arrested for driving while under the influence by a police officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance." *Regula*, 146 A.3d at 842. *Regula* does not hold that the "reasonable grounds" must be formed prior to the traffic stop or require a lawful traffic stop as a prerequisite to a valid license suspension. *Id.* at 844. As we explained:

> [A]lthough the fact that the initial stop may have been improper would not necessarily prevent a suspension of license where there was a subsequent refusal to submit to

---

[4] Rule 201 of the Pennsylvania Rules of Evidence governs judicial notice of adjudicative facts, providing:

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> (1) is generally known within the trial court's territorial jurisdiction; or
>
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Pa. R.E. 201(b).

10

> a breathalyzer test, such a suspension will not be allowed *if the officer's request was not supported by reasonable grounds for the officer to have believed that the person was under the influence of alcohol*.

*Regula*, 146 A.3d at 844 (quoting *Wysocki*, 535 A.2d 79–80) (emphasis added).

Notably, the facts of *Regula* are similar to those presented here. In *Regula*, the licensee in the criminal DUI proceeding succeeded in proving that the traffic stop was illegal and having the charges dismissed. In the civil license suspension proceeding, the licensee attempted to use evidence related to the criminal proceedings, i.e., suppressed evidence from the illegal stop and the dismissal of the criminal charges, to overturn the license suspension. The trial court excluded the evidence based on *Wysocki* and its progeny concluding that such evidence is not relevant to the civil license suspension matter. *Regula*, 146 A.3d at 844. On appeal, we determined that the trial court did not abuse its discretion in this regard and affirmed the trial court's order upholding the license suspension. *Id.* at 846.

Applying the foregoing analysis here, we conclude that the Department presented substantial evidence that Trooper had reasonable grounds to believe that Licensee was operating his vehicle while under the influence of alcohol. Although Trooper may have lacked reasonable grounds to initiate the traffic stop, he formed reasonable grounds that Licensee was driving while under the influence once the stop was made. Trooper testified Licensee struggled to find his driver's license in a stack of cards; Licensee admitted to drinking a few beers with dinner; Licensee had "bloodshot glassy eyes;" a strong odor of alcoholic beverages emanated from Licensee's breath; and Licensee's speech was a "bit slurred." N.T. at 8. Such evidence constitutes reasonable grounds to believe that Licensee was operating his vehicle while under the influence of alcohol. *See Regula*, 146 A.3d at 844

11

(reasonable grounds found where the arresting officer testified that the licensee had a "strong odor of alcoholic beverage emanating from him," admitted to consuming three beers, and had "glassy bloodshot eyes and slurred speech").

### IV. Conclusion

Accordingly, we affirm the order of the trial court upholding the license suspension.

 

 

                                                _____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Dillon,                           :
                                        :
                    Appellant           :
                                        :
            v.                          :  No. 1661 C.D. 2017
                                        :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Driver Licensing              :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>November</u>, 2018, the order of the Court of Common Pleas of Greene County, dated October 16, 2017, is AFFIRMED.

 

 

_____
MICHAEL H. WOJCIK, Judge