## IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| THOMAS J. HOOVER, | : | No. 219 WAL 2019 |
| | : | |
| Petitioner | : | Petition for Allowance of Appeal from |
| | : | the **Unpublished Memorandum** |
| | : | **Opinion and Order** of the |
| v. | : | Commonwealth Court at No. 1527 CD |
| | : | 2018 (Simpson, Covey, **Ceisler**, JJ.), |
| | : | entered on June 25, 2019, **affirming** |
| COMMONWEALTH OF PENNSYLVANIA, | : | the Order of the Lawrence County |
| DEPARTMENT OF TRANSPORTATION, | : | Court of Common Pleas at No. 70006 |
| BUREAU OF DRIVER LICENSING, | : | of 2018, M.D. (Cox, J.), entered on |
| | : | November 6, 2018 |
| Respondent | : | |

## CONCURRING STATEMENT

**JUSTICE WECHT**                                    **DECIDED:  NOVEMBER 25, 2019**

I concur in the Court's decision to deny *allocatur*.  I write separately to highlight a

jurisprudential issue that may require this Court's attention in the future.

This petition is the second (at least) attempt in the past three years in which a

petitioner has invited this Court to address the constitutionality of the procedure by which

the Pennsylvania Department of Transportation ("PennDOT") suspends an individual's

driver's license under the Implied Consent Law.[1]  *See Regula v. Pa., Dep't of Transp.,*

---

[1]    The Implied Consent Law, in pertinent part, provides:

(b) Civil penalties for refusal.--

(1) If any person placed under arrest for a violation of section 3802
is requested to submit to chemical testing and refuses to do so, the
testing shall not be conducted but upon notice by the police officer,
the department shall suspend the operating privilege of the person
as follows:

*Bureau of Driver Licensing*, 146 A.3d 836 (Pa. Cmwlth. 2016), *appeal denied*, 169 A.3d 9 (Pa. 2017).

In *Department of Transportation v. Wysocki*, 535 A.2d 77 (Pa. 1987), this Court concluded that PennDOT's authority to suspend an individual's driver's license "is not conditioned on the validity of the arrest which gives rise to the request for a breathalyzer test." *Wysocki*, 535 A.2d at 79. Thus, "[t]he driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. The only fact necessary to the administrative determination is the driver's refusal to comply with the breathalyzer request after being taken into custody." *Id.*

However, as Justice Papadakos aptly noted in his *Wysocki* dissent, the "majority opinion compels a conclusion that a police officer can stop anyone, anyplace, anytime of the day or night, *for no articulable reason at all*, and *then* form a reasonable belief that the person so stopped, whether in or about *anyone's* motor vehicle, has been driving while under the influence of alcohol . . . . If the person refuses [to undergo a breathalyzer test], the driver's license is suspended for one year." *Id.* at 80 (Papadakos, J., dissenting).

Adhering to this Court's *Wysocki* decision, the Commonwealth Court similarly has decided that a person appealing a license suspension cannot question a police officer's rationale for a vehicle stop because a license suspension is not a criminal proceeding. *See Regula*, 146 A.3d at 844 ("Courts of this Commonwealth have consistently followed and cited *Wysocki* for . . . distinguishing between the civil license suspension and the criminal [driving under the influence] proceedings.").

---

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(b).

In the decision below in the instant case, the Commonwealth Court outlined that, "[t]o support the suspension of a licensee's operating privilege under the Implied Consent Law, [Penn]DOT must prove that the licensee: (1) was arrested for DUI by an officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol in violation of Section 3802 of the Vehicle Code; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his refusal might result in a license suspension and would result in enhanced penalties if he were later convicted of DUI." *Hoover v. Pa., Dep't of Transp., Bureau of Driver Licensing*, 2019 WL 2587695, at *2 (Pa. Cmwlth. June 25, 2019). However, the Commonwealth Court observed, "'[f]or "reasonable grounds" to exist, the police officer obviously need not be correct in his belief that the motorist had been driving while intoxicated. [The relevant inquiry is] the [officer's] authority to request a person to submit to a chemical test and *not the admission into evidence of the result of such a test*.'" *Id.* at *4 (quoting *Pa., Dep't of Transp., Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976)).

I recognize the importance of *stare decisis* in our jurisprudence, and I accordingly concur in today's decision to deny review. Nonetheless, as the Commonwealth Court observed in *Regula*: "Our sister states that have examined this issue have split on whether a legal stop is a prerequisite for a license suspension pursuant to implied consent laws." *Regula*, 146 A.3d at 845 (collecting cases). Moreover, the United States Supreme Court handed down its opinion in *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct. 2160 (2016), subsequent to our *Wysocki* decision. The Commonwealth Court recognized that, while the *Birchfield* decision did "not question[] the civil consequences imposed by state implied consent laws, the [High] Court signaled its continued willingness to apply a Fourth Amendment analysis to such laws." *Regula*, 146 A.3d at 846. Finally, the Commonwealth Court noted that "neither *Wysocki* nor its progeny addressed the statutory requirements

of the Section 6308(b) of the Vehicle Code, nor the impact of [a] 2004 amendment, which occurred after *Wysocki* was decided." *Id.* Nonetheless, the Commonwealth Court concluded (correctly) that it was obligated to follow *Wysocki*. *See id.*

In light of the United States Supreme Court's intervening decision in *Birchfield*, as well as statutory changes since *Wysocki*, it may be necessary for this Court to reconsider our holding in *Wysocki* in an appropriate case. Although I agree that neither this petition nor the petition filed in *Regula* is or was the proper vehicle for deciding such a claim, I would not foreclose the possibility that this Court may need to review this issue when a proper petition appears.

Justices Donohue and Dougherty join this concurring statement.