# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald S. Lepre, Jr.,          :
            Appellant        :
                             :
            v.                :    No. 1082 C.D. 2016
                             :    Submitted: December 23, 2016
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                 FILED: April 12, 2017

Gerald S. Lepre, Jr. (Licensee), *pro se*, appeals an order of the Court of Common Pleas of Allegheny County (trial court) dismissing his appeal of a one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Bureau) pursuant to Section 1547 of the Vehicle Code (Implied Consent Law).[1]  For the reasons that follow, we affirm the trial court.

On October 31, 2015, Licensee was arrested and charged with, *inter alia*, Driving Under the Influence of Alcohol or Controlled Substance pursuant to Section 3802(a)(1) of the Vehicle Code, 75 Pa. C.S. §3802(a)(1).  He was transported to Mercy Hospital for chemical testing.  The Implied Consent Form

---

[1] 75 Pa. C.S. §1547.  Section 1547 of the Vehicle Code is commonly referred to as the Implied Consent Law.  The Implied Consent Law authorizes suspension of the driving privileges of a licensee for one year where the licensee is placed under arrest for driving under the influence of alcohol, and the licensee refuses a police officer's request to submit to chemical testing.

DL-26, signed by the arresting officer, recorded that Licensee refused to submit to a blood test.

On November 27, 2015, based on Licensee's refusal to submit to chemical testing, the Bureau sent a letter to Licensee informing him of a one-year suspension of his operating privilege, effective January 1, 2016, for his violation of the Implied Consent Law, 75 Pa. C.S. §1547(b)(1)(i).[2] The letter stated that Licensee had a right to appeal the suspension to the trial court within 30 days. Licensee's Brief, Appendix 1. Licensee did not receive the letter.

On March 23, 2016, Licensee petitioned to appeal *nunc pro tunc* from the one-year operating privilege suspension. At the hearing thereon, Licensee testified that he never received the Bureau's November 27, 2015, letter.[3] N.T., 4/7/2016, at 3. The letter informing Licensee of his one-year suspension contained errors. It was incorrectly addressed to "Gerald S. Lepre*s*," did not include Licensee's apartment number and contained an incorrect driver's license number. Licensee's Brief, Appendix 11, at 3. These errors were a result of inaccuracies in

---

[2] Section 1547(b)(1)(i) provides:

> (b) Suspension for refusal. –
>> (1) If any person placed under arrest for a violation of section 3802 [75 Pa. C.S. §3802] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>>> (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

[3] Licensee explained that he first learned of the license suspension on February 16, 2016, when he went to a Department of Transportation service center to replace his driver's license, which he had lost. There, he was informed that his license was suspended. Notes of Testimony, 4/7/2016, at 4 (N.T. ___).

the original police paperwork, which were copied verbatim onto the DL-26 form. The trial court granted Licensee's petition to appeal *nunc pro tunc*.

On June 30, 2016, the trial court held a *de novo* hearing on the merits of Licensee's petition to appeal the one-year suspension of his operating privilege. Licensee contended that the defects in the DL-26 form – misspelling of Licensee's last name, lack of apartment number with Licensee's address, and incorrect driver's license number – rendered his suspension invalid. In essence, Licensee argued that the suspension was invalid because the DL-26 form did not identify him as the individual who refused chemical testing on October 31, 2015.

The Bureau countered with the testimony of three police officers to establish that Licensee was the individual who was arrested on October 31, 2015, for driving under the influence and was the subject of the DL-26 form. Officer Brown testified that on October 31, 2015, he was on duty when a vehicle abruptly pulled out in front of his unmarked police vehicle. Officer Brown followed the vehicle and initiated a traffic stop. He identified Licensee as the driver of the vehicle and testified concerning Licensee's behavior as follows:

> [Officer Brown]: When I walked up to the window, I immediately smelled a strong odor of alcohol. I began to talk to him and asked for his driver's license, registration and insurance. He looked up at me. I observed his eyes to be bloodshot. He then became very argumentative. I then asked for his driver's license again. He had slurred speech. He is like, I don't have it. He then began to question the stop also with slurred speech.
>
> [Counsel]: What happened next?
>
> [Officer Brown]: I then went with Lieutenant Cunningham. Notified him of my observations. We then made a determination to have him step out for field sobriety tests. As I went back to talk to him, I asked him to step out of the vehicle. At which time he had a very difficult time unlocking the door.

3

As he did, he finally did unlock the door, he slung it open real hard. And as he was coming out the vehicle, he stumbled and had to grab on to the top frame of the door for balance.

[Counsel]: Did you then ask him to perform field sobriety tests?

[Officer Brown]: No. I turned him over to Lieutenant Cunningham.

N.T., 6/30/2016, at 10-11.

Lieutenant Cunningham also identified Licensee as the driver of the subject vehicle. A certified practitioner and instructor in standardized field sobriety tests, Cunningham testified that he performed three field sobriety tests, and Licensee exhibited several signs of intoxication under each.[4] Lieutenant Cunningham summed up his observations as follows:

When I first encountered [Licensee], based upon my observations of his driving, my observations of his contact with [Officer] Brown, my observations of his contact with me, including the fact he had glassy, bloodshot eyes, slurred and mumbled speech, he was extremely combative, using a lot of profanity and refusing to cooperate to instructions, when I added that to my observations of his performance on standardized field sobriety tests, it was my opinion that he was under the influence of an alcohol beverage to the point that he could not safely operate a motor vehicle.

N.T., 6/30/2016, at 19-20.

---

[4] Lieutenant Cunningham performed a horizontal gaze nystagmus test, a walk and turn test, and a one-leg stand test. On the horizontal gaze nystagmus test, Lieutenant Cunningham observed six out of a possible six clues of impairment. On the walk and turn test, seven out of eight possible clues of impairment were observed. On the one-leg stand test, Lieutenant Cunningham observed three out of four signs of impairment.

4

Finally, Officer Craig Sullivan, a certified intoxilyzer operator for the City of Pittsburgh, identified Licensee as the subject of the DL-26 form and recounted his interaction with Licensee at the hospital:

> [Counsel]: And now, on the DL-26, is this the form that you filled out concerning the [Licensee] standing in the courtroom today?
>
> [Officer Sullivan]: Yes.
>
> * * *
>
> [Counsel]: Did you read to [Licensee] from the form?
>
> [Officer Sullivan]: Yes.
>
> [Counsel]: What paragraphs did you read to [Licensee]?
>
> [Officer Sullivan]: I read paragraph one through four and I checked the box underneath.[5]

---

[5] Paragraphs one through four of the DL-26 form state:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of *blood* (blood, breath or urine. Officer chooses the chemical test).
>
> 3. If you refuse to submit to the chemical test, your operative privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.

**(Footnote continued on the next page . . .)**

[Counsel]: What test did you ask him to perform?

[Officer Sullivan]: I asked him to give blood for testing.

[Counsel]: Did he agree to give the test of blood?

[Officer Sullivan]: No.

[Counsel]: Was [Licensee] cooperative during that period of time?

[Officer Sullivan]: He was swearing a lot. He didn't like us. But I asked him five times to give me blood. I gave him ample opportunities and then I wrote refused on the [DL-26] form.

N.T., 6/30/2016, at 28-29.

Officer Sullivan also testified about the errors on the DL-26 form. He stated that the errors stemmed from mistakes in the arresting officers' paperwork, which he copied onto the DL-26 form. Despite these errors, Officer Sullivan explained that in an abundance of caution, he wrote the arrest incident number on the top of the DL-26 form, and this form matches the incident number contained on the arresting officers' paperwork. N.T., 6/30/2016, at 32.

At the conclusion of the hearing, the trial court dismissed Licensee's appeal. In its opinion, the trial court held that any defects that existed in the DL-26 form were cured by providing Licensee a *de novo* hearing on the merits. Licensee's Brief, Appendix 12, at 4. Moreover, the trial court stated that based on

---

**(continued . . .)**

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

Licensee's Brief, Appendix 11, at 1.

the testimony and evidence presented at the hearing, "[t]he police reasonably found [Licensee] to be under the influence on October 31, 2015. [The police] read him his warnings under DL-26 and despite the warnings, [Licensee] chose to refuse the testing requested of him." *Id.* at 4-5. Licensee now appeals.

On appeal,[6] Licensee offers several arguments to challenge his one-year license suspension. First, the imposition of a criminal penalty for refusal to submit to a chemical test has been found unconstitutional in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). Second, Licensee was never given notice of the suspension in violation of Section 1540(b) of the Vehicle Code. Third, the trial court's order violates the coordinate jurisdiction rule. Fourth, there was no probable cause for Licensee's arrest. Fifth, the trial court's decision was against the weight of the evidence. We address Licensee's arguments *seriatim*.

Licensee first argues that the Bureau's imposition of a one-year operating privilege suspension based on his refusal to submit to chemical testing was unconstitutional under the recent United States Supreme Court decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160. We disagree.

In *Birchfield*, the Supreme Court analyzed the constitutionality of blood and breath tests under the Fourth Amendment guarantee against unreasonable searches and seizures. The Court found that the Fourth Amendment permits a warrantless breath test incident to an arrest for drunk driving. A blood test, however, because of its intrusive nature, requires a warrant to comport with

---

[6] Our review in a license suspension case is "to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion." *Regula v. Department of Transportation, Bureau of Driver Licensing*, 146 A.3d 836, 839 n.3 (Pa. Cmwlth. 2016) (quoting *Nornhold v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 59, 62 n.4 (Pa. Cmwlth. 2005)).

Fourth Amendment requirements. Moreover, the Court held that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense. In short, *Birchfield* calls into question the voluntariness of consent to a request for a blood test where the driver is advised that refusing the blood test will result in a criminal charge.[7] In Pennsylvania, it is not a crime to refuse to consent to a blood test. Further, and more significantly, the *Birchfield* court expressly approved of implied consent laws that impose *civil* penalties for refusal to submit to a blood test. The Court stated:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.... Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

*Id.* at 2185. Pennsylvania's Implied Consent Law imposes a license suspension for refusal to submit to a blood test. 75 Pa. C.S. §1547(b). A license suspension is a civil, not criminal, penalty. *Nornhold*, 881 A.2d at 63. Accordingly, *Birchfield* is inapposite.

Licensee next argues that the trial court erred in upholding his suspension because he never received notice pursuant to Section 1540(b) of the Vehicle Code. Section 1540(b) provides:

---

[7] Our Superior Court has recognized that in the criminal context, *Birchfield* does call into question the validity of a motorist's consent after being read warnings on the DL-26 form, which explain that refusal could result in the enhancement of criminal penalties under Sections 3802 and 3804 of the Vehicle Code, 75 Pa. C.S. §§3802, 3804. *See Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2015). *See also Boseman v. Department of Transportation, Bureau of Driver Licensing*, ___ A.3d ___ (Pa. Cmwlth., No. 746 CD 2016, filed March 17, 2017), slip. op. at 22 (noting that "although *Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed, such is not the case before us in this civil license suspension appeal under the Implied Consent Law.").

8

(1) Upon the suspension or revocation of the operating privilege or the disqualification of the commercial operating privilege of any person by the department, the department shall forthwith notify the person in writing at the address of record to surrender his driver's license to the department for the term of the suspension, revocation or disqualification.

(2) The department shall include with the written notice of suspension, revocation or disqualification a form for acknowledging the suspension, revocation or disqualification, which form shall be filed with the department if the person has no license to surrender.

(3) The suspension, revocation or disqualification shall be effective upon the earlier of:

(i) a date determined by the department; or

(ii) the date of filing or mailing of the license or acknowledgement to the department, if that date is subsequent to the department's notice to surrender the license.

(4) Upon surrender of the license or acknowledgement, the department shall issue a receipt showing the date it received the license or acknowledgement.

75 Pa. C.S. §1540(b).

Licensee is correct that, due to inaccuracies in the paperwork, the Bureau failed to comport with the requirements of Section 1540(b). Licensee's mailing address did not contain his apartment number, which resulted in him not receiving the notice of suspension. Accordingly, Licensee could not have timely appealed his suspension.[8] However, the trial court remedied the lack of timely

---

[8] "[A]n appeal from a driver's license [suspension] must be taken within thirty days from the mailing date of the Department's notice." *Department of Transportation, Bureau of Driver Licensing v. Matlack*, 600 A.2d 998, 999 (Pa. Cmwlth. 1991).

9

notice by granting Licensee's petition to appeal the suspension *nunc pro tunc*. The trial court's *de novo* hearing cured the previous notice defect.[9]

Third, Licensee argues the trial court's order violates the coordinate jurisdiction rule, which provides that "judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). Licensee argues that the trial court determined the merits of his appeal when it granted him the right to appeal *nunc pro tunc*. This argument lacks merit. The only issue before the trial court at the April 7, 2016, hearing was whether Licensee satisfied the requirements for appealing *nunc pro tunc*.[10] The merits of the underlying suspension were not yet at issue and were not considered. At the *de novo* hearing on June 30, 2016, a different trial court judge considered the merits and dismissed Licensee's appeal. This sequence of events did not offend the coordinate jurisdiction rule.

Fourth, Licensee argues that the trial court erred in upholding the suspension because the police did not have probable cause to arrest him on October 31, 2015. The Bureau responds that the legality of a traffic stop is irrelevant to the suspension of a license for refusing chemical testing. We agree. It is well established that the legality of an arrest is immaterial in a civil license suspension

---

[9] Licensee also argues that the notice defect stripped him of the "right to turn over his operating privilege on the correct date and time in order that he may begin his suspension," in violation of his rights under the United States and Pennsylvania Constitutions. He fails to develop this argument any further or cite to relevant authority; thus, we consider it waived. *See* Pa. R.A.P. 2119(a); *Commonwealth v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008).

[10] In order to proceed *nunc pro tunc*, a petitioner must prove that the failure to timely appeal was the result of extraordinary circumstances involving fraud or a breakdown in the administrative or judicial process. *Kulick v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 1148, 1150 (Pa. Cmwlth. 1995).

proceeding. *Department of Transportation v. Wysocki*, 535 A.2d 77, 79 (Pa. 1987). *See also Kachurak v. Department of Transportation, Bureau of Driver Licensing*, 913 A.2d 982, 986 (Pa. Cmwlth. 2006) ("The law is clear that the legality of the underlying DUI arrest is of no moment in a license suspension that results from a refusal to submit to chemical testing."); *Stein v. Department of Transportation, Bureau of Driver Licensing*, 857 A.2d 719, 723 (Pa. Cmwlth. 2004) ("[E]ven an unconstitutional arrest does not preclude a suspension of operating privileges because this suspension is a civil proceeding."). Accordingly, whether there was probable cause to stop Licensee on October 31, 2015, is inconsequential to the present appeal.[11]

Finally, Licensee contends that the trial court erred in crediting the testimony of Officer Brown, Lieutenant Cunningham, and Officer Sullivan. He argues that although their testimony supported the trial court's finding that Licensee was the individual who was arrested on October 31, 2015, the DL-26 form, which does not identify Licensee, carries more evidentiary weight. We disagree. Determinations as to credibility and evidentiary weight are solely within the province of the trial court. *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 17 (Pa. Cmwlth. 2010). Our review is limited to whether the trial court's factual findings are supported by competent evidence. *Regula*, 146 A.3d at 839 n.3. The officers' testimony unquestionably identified

---

[11] We note that, in all likelihood, Officer Brown's and Lieutenant Cunningham's description of Licensee's erratic driving established probable cause to stop Licensee for violating the Vehicle Code. *See* N.T., 6/30/2016, at 9-10, 16.

11

Licensee as the individual arrested on October 31, 2015. This is more than sufficient to support the trial court's findings.

For the reasons stated above, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald S. Lepre, Jr.,
        Appellant

        v.

Commonwealth of Pennsylvania,
Department of Transportation,
Bureau of Driver Licensing

:
:
:
:
:
:
:
:
:
:

No. 1082 C.D. 2016

# **O R D E R**

AND NOW, this 12th day of April, 2017, the order of the Court of Common Pleas of Allegheny County dated June 30, 2016, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge